UNIVERSAL MOTORS, INC. and BMW
of North America, Inc., Appellants,

v.

Thomas WALDOCK, Appellee.

No. S–796.

Supreme Court of Alaska.

May 16, 1986.

Michael W. Sharon, Evan L. Delgado, Hartig, Rhodes, Norman, Mahoney & Edwards, Anchorage, for appellants.

Randall E. Farleigh, Thomas Waldock, Farleigh & Waldock, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. INTRODUCTION

This suit arose over the refusal of a car dealer and manufacturer to authorize repairs on a car under warranty because they concluded that the damage to the car's engine was caused by consumer abuse. The owner filed suit and recovered judgment allowing him to rescind the purchase contract and to receive costs and attorney's fees under the Magnuson-Moss Act. The dealer and manufacturer appeal, claiming that the superior court improperly placed the burden of proof on them to prove that the engine did not fail due to a materials or workmanship defect, and that the award of attorney's fees was an abuse of discretion.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Thomas Waldock (Waldock) purchased a 1983 BMW 320i from Universal Motors, Inc. (Universal). It was warranted "to be free of defects in materials or workmanship for a period of three years or 36,000 miles, whichever occurs first." Within the warranty period, the car's engine failed and upon examination was found to have been extensively damaged. Ultimately Dave Pennington, the district service manager of BMW of North America (BMW), denied authorization to repair the car under warranty and Universal was apparently bound by that decision.[1]

BMW denied warranty coverage because it concluded that Waldock damaged the engine by over-revving it. Waldock vehemently disputed BMW's contention. He claimed that while driving the car at a low speed, with the engine at low r.p.m.'s, the engine emitted a gear-crunching noise, ceased operation, and would not restart.

After Universal and BMW (collectively Universal) refused to fix the car under warranty, Waldock filed a complaint against both, alleging that he was entitled to rescind his purchase contract for the BMW because Universal had breached express and implied warranties and had violated the Unfair Trade Practices and Consumer Protection Act and the Magnuson-Moss Act. Further, he alleged that the refusal to repair was outrageous and fraudulent and undertaken with reckless indifference to his rights. Waldock requested either specific performance, damages, or cancellation of the sales contract as well as punitive damages, reasonable costs and attorneys fees.

Before trial, Universal moved for summary judgment on Waldock's claims for breach of implied warranty, fraud, violation of the Unfair Trade Practices and Consumer Protection Act, and his claims for punitive, incidental and consequential damages. Waldock consented to dismissal of the first three claims. The court ruled that genuine issues of fact existed regarding Waldock's claims for punitive, incidental and consequential damages, thus denying Universal's motion.

At trial, Waldock's expert witnesses testified that the engine failed because of a problem with the engine's timing, caused by a damaged timing tensioner. Universal

---

**1.** This case is peculiar compared to many other cases in which an auto buyer has sued a dealer and a manufacturer because BMW and Universal are not adversaries and are represented by the same counsel.

maintained that the engine damage was caused by consumer abuse, thus specifically excluded from warranty coverage.

The issue on which this appeal turns is solely a question of law concerning the burden of proof in a Magnuson-Moss Act warranty claim. Judge Brian C. Shortell instructed the jury, over Universal's objection, that for Universal to prevail the jury must find it more likely than not that Waldock over-revved the engine and that the over-revving caused the damage to the car. At the jury instruction conference, Judge Shortell stated his reasons for instructing the jury in this manner:

> I'm very troubled by the fact that it seems to me that the [Magnuson-Moss Act] provides that Federal minimum standards for warranty are that the warrantor remedy the defect in a consumer product within a reasonable time and without charge, and that ... performance of that duty is only excused if the warrantor can show that the defect, malfunction or failure was caused by damage not resulting from a defect or malfunction while in the possession of the consumer, or unreasonable use.
>
> It seems to me that that's [the] classic burden of proof statement.

The jury returned a verdict for Waldock, and awarded him $15,748.00 for the fair market value of the car and $1,937.80 in incidental damages.[2] Judge Shortell signed the order and awarded reasonable actual attorney's fees of $36,526.00 and reasonable actual costs and expert witnesses fees of $1,987.87 and $6,494.67 respectively, for a total award of $62,684.34. Universal appeals on the burden of proof issue as a matter of law, and on the attorney's fees and costs issue claiming that the trial court abused its discretion.

## III. DISCUSSION

### A. BURDENS OF PROOF UNDER THE MAGNUSON–MOSS ACT

There are two burdens to be analyzed in this case. According to Waldock, he must show the existence of an express warranty, that it was breached, that the breach proximately caused the loss, and that the product failed to perform in accordance with the warranty terms. If he establishes a prima facie case, the burden shifts to Universal to prove owner abuse.

■ Judge Shortell correctly noted that the language in the Magnuson-Moss Act relating to consumer abuse is a "classic burden of proof statement." The relevant section of the Magnuson-Moss Act, 15 U.S.C. § 2304(c) (1982) provides:

> The performance of the duties under subsection (a) of this section [requiring warrantor to remedy the consumer product in a reasonable time and without charge] shall not be required of the warrantor *if he can show* that the defect, malfunction, or failure of any warranted consumer product to conform with a written warranty, was caused by damage (not resulting from defect or malfunction) while in the possession of the consumer, or unreasonable use (including failure to provide reasonable and necessary maintenance).

(Emphasis added). The statute places the burden of proving owner abuse squarely on the warrantor. The crucial question, therefore, is precisely what Waldock had to show to establish a prima facie case and shift the burden to Universal under the Magnuson-Moss Act.[3]

---

**2.** The judgment held Universal jointly liable for the full award without discussion of the issue of privity between consumer and manufacturer. However, it is now common in breach of express warranty actions for the consumer to be able to reach the party that extended the warranty, the manufacturer. Miller & Kanter, Litigation Under Magnuson-Moss: New Opportunities in Private Actions, 13 U.C.C.L.J. 10,22 (1980). This court has held that privity is not necessary in an action for breach of an implied warranty. *Moorow v. New Moon Homes, Inc.,* 548 P.2d 279, 289 (Alaska 1976). The *Morrow* holding should extend to express warranty cases. Other cases support such an application. *Koperski v. Husker Dodge, Inc.,* 208 Neb. 29, 302 N.W.2d 655 (1981); *Ventura v. Ford Motor Co.,* 180 N.J.Super. 45, 433 A.2d 801 (App.Div.1981).

**3.** Waldock urges us to interpret similar language in Alaska's "Lemon Law," AS 45.45.300–

1. *Waldock's Burden of Proof.*

Universal argues that the consumer bears the burden of proof in a breach of warranty case under Alaska's Uniform Commercial Code (UCC) and that the Magnuson-Moss Act was not intended to shift this burden. It further claims that the jury should have been instructed that Waldock had the burden of proving that the Universal breached its express warranty by selling Waldock a defective automobile. Waldock contends he met his burden as a matter of law, thus the jury instruction requiring Universal to prove consumer abuse by a preponderance of the evidence was not erroneous.

■ The Magnuson-Moss Act created no new implied warranties upon which consumers can sue, rather it created a new federal cause of action for the breach of consumer warranties. *Royal Lincoln-Mercury Sales v. Wallace*, 415 So.2d 1024 (Miss.1982). An alleged breach of an express warranty can be the basis of two separate claims, one based on the state's UCC and one based on the federal act. "The elements of proof are the same whether the claim is made under the [Magnuson-Moss] act or under state law." *Wallace*, 415 So.2d at 1026–27; *see also Welch v. Fitzgerald-Hicks Dodge, Inc.*, 121 N.H. 358, 430 A.2d 144, 149 (1981). Thus to determine Waldock's burden of proof the UCC provisions should be examined, for if it is determined that Waldock established a prima facie case under the UCC, then he has also established a prima facie case under the Magnuson-Moss Act. *Welch*, 430 A.2d at 149.

The parties agree that the BMW warranty in this case is an express warranty as defined in AS 45.02.313,[4] a section of the UCC as adopted in Alaska. AS 45.02.607(d) provides that "[t]he burden is on the buyer to establish a breach with respect to the goods accepted."

Some courts have held that consumers suing the dealer and manufacturer have a heavy burden of proof. In *Arnold v. Ford Motor Co.*, 90 N.M. 549, 566 P.2d 98 (1977), the court held that Arnold had the burden of proving four essential elements in a UCC express warranty suit against the dealer and manufacturer: (1) the existence of a defect in the operation of the vehicle, (2) *the defect resulted from factory materials or workmanship*, (3) the plaintiff presented the vehicle to the automobile dealer with a request that the defect be repaired, and (4) the dealer failed or refused to repair the defective parts. *Arnold*, 566 P.2d at 99.

The warranty in *Arnold*, like the warranty in most car cases, is a standard "repair and replace" warranty providing a remedy if any part is found to be defective in "factory materials or workmanship" within a specified time period. The dispute in *Arnold* focused on whether the consumer had presented sufficient evidence to establish the second element, i.e., the defect resulted from factory materials or workmanship. Although the trial court made no specific findings on the issue, the appellate court held that there was substantial testimony to support the fact that the defects had existed from the time Arnold drove the car from the lot. *Arnold*, 566 P.2d at 99–100.

Likewise, the court in *Walker Ford Sales v. Gaither*, 265 Ark. 275, 578 S.W.2d 23, 25 (1979), held that the consumer's burden in an express "repair and replace" warranty case is to show that the defect existed at the time the car was first delivered to the consumer. In *Gaither*, a vibration existed from the date of purchase so the court had no trouble finding that this bur-

360. This statute was not in effect at the time Waldock's cause of action arose, hence it is inapplicable. We decline to interpret its language in this case.

4. AS 45.02.313(a)(1) provides:
    (a) Express warranties by the seller are created as follows:

(1) An affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

den had been met. *Id.; see also, Prutch v. Ford Motor Co.*, 618 P.2d 657, 660 (Colo. 1980) (consumer must establish that the defect arose in the course of manufacturer-distribution and before purchase); *Royal Business Machines v. Lorraine Corp.*, 633 F.2d 34, 44 (7th Cir.1980) (breach of express warranty occurs only if goods are defective upon delivery and not if goods later become defective through abuse or neglect); *Collum v. Fred Tuch Buick*, 6 Ill.App.3d 317, 285 N.E.2d 532, 536 (1972) (to recover on express warranty theory, consumer must prove that the alleged malfunctioning of the car was caused by a defect in parts or workmanship).[5] In cases such as these, courts have held that circumstantial evidence is enough to support the consumer's burden of proof that the damage was caused by a defect in factory materials or workmanship. *See Colorado Serum Co. v. Arp*, 504 P.2d 801, 805–06 (Wyo.1972) (circumstantial evidence permitted to prove that proximate cause of illness of owner's swine herd was manufacturer's defective serum).

The case before us now, however, is more difficult because Waldock experienced a "single incident," total breakdown of his car. Waldock claims that on these facts all he had to prove is that he took his obviously malfunctioning car, then still under warranty, to Universal and that Universal refused to repair it. He argues that a car that will not run does not conform to the warranty. Nonconformance with the warranty is a breach.

Some authorities support Waldock's view. The court in *Fargo Machine & Tool Co. v. Kearney & Trecker Corp.*, 428 F.Supp. 364, 374 (E.D.Mich.1977), held that the burden is not on the consumer of defective goods to show the precise technical explanations behind a malfunction, but rather, he must show that the goods *do not conform* to the warranty.

Likewise, in *Osburn v. Bendix Home System, Inc.*, 613 P.2d 445 (Okla.1980), a mobile home manufacturer asserted that since the consumer failed to introduce any evidence of a defect in materials or workmanship, he failed in his burden of proof. That court stated:

> [T]he argument advanced is that, as in actions based on the theory of products liability, so in a breach-of-warranty case, the claimant must establish the *presence of a specific defect.* The contention so advanced is without merit. Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the goods were defective in their performance or function or that they otherwise failed to conform to the warranty.

*Osburn*, 613 P.2d at 448 (footnote omitted) (emphasis in original). In *Osburn*, the consumer experienced numerous problems soon after moving into his mobile home and the court had no trouble attributing them to defects in materials or workmanship. *Id.* at 448–49.

On the other hand, in *Haas v. Buick Motor Division of the General Motors Corp.*, 20 Ill.App.2d 448, 156 N.E.2d 263 (1959), the court held that a consumer failed to make out a prima facie case against the manufacturer for breach of an express warranty. The court stated that "the burden was on the plaintiff to prove, among other things, that there was some material defect in materials or workmanship." *Haas*, 156 N.E.2d at 266 (citation omitted). The pleadings were silent as to what part failed or was defective in materials or workmanship, thus causing Haas' car to catch on fire. The consumer in *Haas* showed *nothing*, yet expected the manufacturer to go forward with an inspection of the car. *Id.* at 267.[6]

---

**5.** One primary difference between the case at bar and most other automobile warranty cases is that Waldock's car was in excellent driving condition until it failed one day as Waldock was driving. Most cases involve cars that had major

problems from nearly the moment they left the lot. *See e.g., Gaither*, 578 S.W.2d at 25; *Arnold*, 566 P.2d at 99–100.

**6.** Similarly in *Collum*, 285 N.E.2d at 536, the court stated that plaintiff had not attempted to

*Haas* is distinguishable from the case before us. Waldock advanced a plausible explanation for an engine failure which can never be conclusively proved, he claims, because of actions by mechanics for Universal. Waldock showed enough to make out a prima facie case of breach of warranty. It was then up to Universal to prove that the damage was caused by consumer abuse. The jury determined that Universal had not proved owner abuse by a preponderance of the evidence.

Problems arise when a consumer is required to prove that there are defects in specific materials or particular workmanship. Furthermore, a requirement that the consumer prove that the defect is caused by materials or workmanship makes the burden of proof language in the Magnuson-Moss Act basically irrelevant. Once the consumer offers credible evidence that the defect is materials or workmanship related, the burden shifts to the warrantor to prove consumer abuse.

Policy reasons also support such a rule. Under the BMW warranty, and according to Universal's witnesses, BMW owners requiring warranty service on their cars may only take the damaged car to the service department of an authorized BMW dealer.[7] Placing the burden on the consumer to prove a precise defect is unfair and unconscionable since the dealer and manufacturer could tamper (whether intentionally or inadvertently) with the evidence. For example, Waldock claims that Universal's work on the engine destroyed evidence of timing problems because the cylinder head was removed.

■ In a car warranty case, the consumer must offer credible evidence that the defect is materials or workmanship related. Such evidence establishes a prima facie case of breach of an express warranty. The burden then shifts to the dealer or manufacturer to prove consumer abuse. To impose an unreasonably heavy burden

on consumers is to deny them a meaningful remedy. *Prutch,* 618 P.2d at 660. We believe this interpretation of the Magnuson-Moss Act best effectuates its intent.

### 2. *The Trial Court's Instructions on the Burden of Proof.*

The trial court did not err in failing to give the jury an instruction on Waldock's burden of proof.

Whether Waldock presented sufficient evidence to establish a prima facie case is a question of law. *See* IX J. Wigmore, Evidence § 2487, at 293 (Chadbourn rev. ed. 1981). If he established a prima facie case, the burden of proof appropriately shifted to Universal to prove consumer abuse.

■ Waldock presented an assortment of experts providing credible evidence that the engine failed due to a timing chain tensioner. To put a more onerous burden of proof on Waldock would destroy the remedial intent of the Magnuson-Moss Act. Waldock established a prima facie case of breach of warranty. The subsequent jury instructions were correct.

### B. ATTORNEY'S FEES AND COSTS

Universal claims that Judge Shortell abused his discretion in awarding Waldock $36,576 in attorney's fees and $8,659.80 in costs for a post judgment award of $45,-175.80. Universal maintains that Waldock's fees were not "reasonably incurred" because a portion of fees arose from Waldock's pursuit of a meritless punitive damages claim. It further contends that Waldock brought the punitive damages claim to make his lawsuit more "cost effective" and to carry out his threat to make the parties' financial records public. Waldock argues that his attorney's fees were reasonable and that his claim for punitive damages was not frivolous. Judge Shortell agreed with Waldock that the punitive damages claim was not frivolous.

---

prove that the malfunctioning of the car was caused by defects in materials and workmanship and could not rely on the doctrine of *res ipsa loquitur* to sustain the burden of proof.

7. In Anchorage, Universal is the only such dealer.

In examining the superior court's award of attorney's fees and costs under the Magnuson-Moss Act,[8] our review is limited to whether the trial court abused its discretion. *Black v. Don Schmid Motor, Inc.,* 232 Kan. 458, 657 P.2d 517, 531 (1983).

Universal cites cases which it claims disallowed attorney's fees awards that greatly exceeded the amount of the judgment. Universal mischaracterizes the holding of *Hanks v. Pandolfo,* 38 Conn.Sup. 447, 450 A.2d 1167 (1982) when it states that the court there recognized that "an attorney's fee award that dwarfs the amount of the award is 'unreasonable' and 'inappropriate' and should not be awarded." Rather, the court in that case stressed that:

> [a] court has few duties of a more delicate nature than that of fixing counsel fees. The degree of delicacy increases when the matter becomes one of review on appeal. The principle of law, which is easy to state but difficult at times to apply, is that only in the case of clear abuse of discretion by the trier may we interfere....

*Hanks,* 450 A.2d at 1170, *quoting Hoenig v. Lubetkin,* 137 Conn. 516, 79 A.2d 278 (1951). The *Hanks* court refused to reverse the trial court's award since it found no abuse of discretion.

Neither does *Hibbs v. Jeep Corp.,* 666 S.W.2d 792 (Mo.App., *cert. denied,* 469 U.S. ——, 105 S.Ct. 177, 83 L.Ed.2d 111 (1984)) support the proposition that an attorney's fee award which dwarfs the amount of the judgment is inappropriate. Rather, the appellate court held that the trial court did not abuse its discretion by failing to award attorney's fees because of lack of clarity in billing procedures, lack of specific per lawyer charges and the failure to segregate time spent pursuing claims against previously dismissed defendants. *Hibbs,* 666 S.W.2d at 799–800.

■ Judge Shortell did not abuse his discretion in awarding Waldock attorney's fees for the actual amount of time spent on the case. Universal refused to attempt to settle this case despite several offers by Waldock and an attempt at a settlement conference. Waldock should not now be penalized for vigorous prosecution of this suit by allowing Universal to successfully claim that some of the attorney time was spent pursuing a "frivolous claim." Judge Shortell explicitly found that Waldock's claim for punitive damages was not frivolous.

■ Universal also argues that the award of actual costs and actual expert witness fees was too large because Administrative Rule 7(c) limits expert witness fees that can be recovered under Civil Rule 54(c) to $25.00 per hour. Waldock's witness fees were in excess of this but were appropriate because he was seeking recovery of costs under a federal act, not under state law. 15 U.S.C. § 2310(d)(2) explicitly allows reasonable costs and expenses to be recovered by successful plaintiffs. Judge Shortell explicitly found that Waldock's use of expert witnesses was appropriate and efficient and thus allowed recovery of the full costs of such witnesses. We do not find an abuse of discretion in awarding these costs and expenses.

The judgment of the trial court is AFFIRMED.

**8.** 15 U.S.C. § 2310(d)(2) (1982) provides:
> If a consumer finally prevails in any action brought under paragraph (1) of this subsection, he may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses (including attorney's fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorney's fees would be inappropriate.