2005 OK CIV APP 31

**Perry CLINE, Plaintiff/Appellant/Cross–Appellee,**

**v.**

**DAIMLERCHRYSLER COMPANY, CORP., Defendant/Appellee/Cross–Appellant,**

**and**

**Chrysler Financial Company, L.L.C., Defendant.**

**No. 99,581.**

Court of Civil Appeals of Oklahoma, Division No. 3.

March 4, 2005.

Certiorari Denied May 9, 2005.

---

Justin Lamunyon, Lamunyon Law Firm, Enid, OK, for Plaintiff/Appellant/Cross–Appellee.

Michael C. Felty, Blake D. Beeler, Foliart, Huff, Ottaway & Bottom Oklahoma City, OK, for Defendant/Appellee/Cross–Appellant.

Opinion by CAROL M. HANSEN, Judge:

¶ 1 This case involves an action by Perry Cline against the manufacturer of his pickup truck for denying warranty coverage for engine damage the manufacturer maintained was caused by owner misuse. Cline obtained relief on one of his two claims at trial. The trial court denied Cline's request for attorneys' fees. Both parties appeal. We affirm in part, reverse in part and remand with instructions.

## I. FACTS AND PROCEDURAL HISTORY

¶ 2 In June 1998, Cline, Plaintiff/Appellant/Cross–Appellee, purchased a 1998 Dodge 3500 pickup from a Dodge dealership in Henryetta, Oklahoma. The truck came with a 60 month/100,000 mile express limited warranty on the Cummins diesel engine components. Defendant/Appellee/Cross–Appellant, DaimlerChrysler Motors Corporation, manufactured the truck. The engine was under warranty at all times relevant to this case.

¶ 3 In November 1999, the truck's engine began making a strange noise. Plaintiff took the truck to an authorized repair facility in Colorado the next day for diagnosis and repair. Mechanics inspected the engine and determined the noise was caused by engine connecting rod and piston wear, and "scoring" of the cylinder walls. DaimlerChrysler authorized replacement of the engine's short block, repairs were made and the truck was returned to Plaintiff.

¶ 4 A few days later, Plaintiff claims he experienced several other problems with the truck. According to Plaintiff, the Colorado dealership corrected some of the problems but did not correct others. DaimlerChrysler

presented evidence the truck was returned due to a fuel gel problem which was remedied. Because Plaintiff apparently voiced his dissatisfaction with the timeliness and accuracy of the repairs performed during both visits, the Colorado dealership service manager advised Plaintiff "he should try to find another dealer that he could take his truck to."

¶ 5 Plaintiff continued to drive his truck from December 1999 through late March 2000, although he testified the truck did not run as well as it did before the problems arose. Specifically, Plaintiff contended the truck suffered from a "loss of power," would barely pull a trailer and could drive only 20 to 35 miles per hour. Notwithstanding, service records indicate Plaintiff drove the vehicle approximately 6,000 miles during that three month span. On March 25, 2000, Plaintiff inquired about trading in his truck at Johnson's of Kingfisher (Oklahoma), a Dodge dealership. The record reveals Plaintiff had driven his truck nearly 70,000 miles by that time. Johnson's sales log sheet indicates Plaintiff did not trade in his truck, having "bolted, upset at figures." Plaintiff did not speak with anyone in the service department that day about any problems with his truck.

¶ 6 Within days of visiting Johnson's, Plaintiff's truck died on a sandy rural Oklahoma road. When efforts to restart the truck failed, Plaintiff and a friend tried unsuccessfully to pull-start the truck. Plaintiff then loaded the truck onto a trailer and hauled it back to Johnson's. The mechanics at Johnson's were advised that Plaintiff had attempted to pull-start the truck. After conducting diagnostic checks and discovering the truck was subject to an outstanding recall notice, the mechanics received authority from DaimlerChrysler to replace the truck's fuel injection pump and engine control module. When those repairs failed to correct the problem, Johnson's was given permission to disassemble and inspect the engine.

¶ 7 A Johnson's mechanic testified he discovered the truck's pistons had come into contact with the valves, causing severe damage to the engine. He also stated the truck's engine control module indicated the engine RPMs had exceeded the red line by about 1,100 RPMs. Johnson's service manager relayed this information to DaimlerChrysler, along with his opinion the engine sustained such "overspeed" damage when Plaintiff attempted to pull-start the truck. DaimlerChrysler's service district manager also inspected the truck. The district manager then made the decision not to authorize warranty repairs on the engine, reasoning the damage was not the result of a warranted defect in materials or workmanship but was caused by Plaintiff's attempt to pull-start the truck. The truck warranty states DaimlerChrysler is not responsible for failure or damage resulting in what the company determines to be abuse or neglect, including overspeeding, over fueling or improper starting practices.

¶ 8 Plaintiff thereafter brought the instant action against DaimlerChrysler, claiming the company's decision not to replace the engine under warranty violated the Magnuson–Moss Warranty—Federal Trade Commission Improvement Act (Magnuson–Moss Act), 15 U.S.C. § 2301 *et seq.*, and the Oklahoma Consumer Protection Act (OCPA), 15 O.S. 2001 § 751 *et seq.*[1] DaimlerChrysler moved for a directed verdict on both of Plaintiff's claims at trial. At the close of all evidence, the trial court directed a verdict for DaimlerChrysler on Plaintiff's OCPA claim and submitted the Magnuson–Moss claim to the jury. The jury returned a verdict in Plaintiff's favor and awarded him $30,000.00. The trial court entered judgment accordingly. Plaintiff then moved for attorney fees, which the trial court denied because it was unable to determine which fees were attributable to the Magnuson–Moss claim against DaimlerChrysler and which were attributable to other claims and defendants. Both parties now appeal.

1. Plaintiff also sued the dealership where he purchased his truck and DaimlerChrysler Financial Company, L.L.C., which financed and later repossessed the truck when Plaintiff refused to continue making payments. Plaintiff's claims against the dealership were dismissed without prejudice before trial and his claims against the finance company are not at issue in this appeal.

## II. PLAINTIFF'S CLAIMS ON APPEAL

### A. OCPA Claim

 ¶ 9 As his first proposition of error, Plaintiff contends the trial court erred in refusing to submit his OCPA claim to the jury. A motion for directed verdict presents "the question of whether there is any evidence to support a judgment for the party against whom the motion is made." *Woods v. Fruehauf Trailer Corp.*, 1988 OK 105, ¶ 8, 765 P.2d 770, 773. In ruling on such a motion, a trial court must consider as true all the evidence and all the inferences reasonably drawn therefrom that are favorable to the party opposing the motion. *Id.* "[A]ny conflicting evidence favorable to the movant must be disregarded." *Id.*

> [A] motion for a directed verdict should be denied when there is a controverted question of fact as to which reasonable minds could differ. The motion should be granted, however, if the party opposing the motion has failed to demonstrate a prima facie case for recovery.

*Guthrie v. Independent School Dist. No. I–30 of Adair County*, 1998 OK CIV APP 47, ¶ 10, 958 P.2d 802, 804 (citations omitted). This Court's standard of review of a trial court's grant of a directed verdict is *de novo*. *Computer Publications, Inc. v. Welton*, 2002 OK 50, ¶ 6, 49 P.3d 732, 735.

¶ 10 In order to establish a prima facie case under the OCPA, Plaintiff was required to show *inter alia* "that the defendant engaged in an unlawful practice as defined at 15 O.S. (1991), § 753." *Patterson v. Beall*, 2000 OK 92, ¶ 30, 19 P.3d 839, 846. Plaintiff lists six acts or policies of DaimlerChrysler, detailed below, that he argues constituted unlawful practices under the OCPA. DaimlerChrysler counters none of those fit the definition of an unfair or deceptive trade practice, or any of the other unlawful practices enumerated in the Act.

 ¶ 11 Plaintiff first contends Daimler-Chrysler's failure to "liv[e] up to the promise" of the warranty violates the OCPA. The very essence of this cause of action was whether DaimlerChrysler justifiably denied warranty repairs on Plaintiff's truck. As previously stated, the warranty did not cover engine overspeeding or improper starting practices. Plaintiff and his expert witness agreed the engine suffered from an overspeed and Plaintiff admitted he tried to pull-start the truck. Under these circumstances, we conclude that denying a warranty claim for the replacement of the engine did not, standing alone, constitute a violation of the OCPA. As DaimlerChrysler correctly asserts, there is no Oklahoma case law suggesting denial of a warranty claim or merely defending against a disputed claim is actionable under the OCPA.

¶ 12 Plaintiff next argues DaimlerChrysler violated the OCPA because its excuse for denying warranty coverage—that the damage was caused by the pull-start attempt—is not supported by its own expert. This argument is factually inaccurate. Although one of DaimlerChrysler's experts testified the overspeed damage was inconsistent with a pull-start attempt on a sandy road, its other expert opined the damage was caused by Plaintiff's pull-start attempt. The later opinion constitutes competent evidence upon which DaimlerChrysler could reasonably rely in defending its warranty denial. *See OKC Refining Co., Inc. v. Gold*, 1985 OK 42, ¶ 12, 701 P.2d 1034, 1038 (competent evidence is evidence which is relevant and material to the issue to be determined).

 ¶ 13 The record reveals that at some point after Plaintiff's truck was repossessed, DaimlerChrysler authorized dismantling and, eventually, replacing the engine in order to increase the truck's auction value. As his third sub-proposition of error, Plaintiff claims DaimlerChrysler violated the OCPA by "secretly dismantling" the key piece of evidence in this case so as to destroy its evidentiary value.

 ¶ 14 First, insofar as this argument attempts to raise spoliation as an issue on appeal, we note there is no evidence Daimler-Chrysler's actions constituted wilful or fraudulent destruction of the engine. *See Beverly v. Wal–Mart Stores, Inc.*, 2000 OK CIV APP 45, ¶ 3, 3 P.3d 163, 165. Moreover, other than asserting the replacement of the engine violated the OCPA, Plaintiff offers no argument or evidence to illustrate how such act

fell within the purview of the Act. Although we agree with Plaintiff that the Act, as a remedial statute, must be liberally construed, *Patterson*, 2000 OK 92 at ¶ 28, 19 P.3d at 846, we cannot concur with Plaintiff's bald assertion that DaimlerChrysler's conduct in authorizing replacement of the engine violated some provision of the OCPA.

¶ 15 Plaintiff next asserts the inclusion of a warranty provision that gives DaimlerChrysler the exclusive right to decide whether damage to a covered part was caused by abuse or neglect is oppressive. 15 O.S.2001 § 752(14). He similarly argues DaimlerChrysler's policy of placing the risk of loss on the consumer if an authorized repair facility makes a mistake in performance of warranty work, is oppressive. As with the previous argument, Plaintiff again fails to specifically explain how the warranty provision and company policy violate the OCPA. We will not address these arguments any further. *Hadnot v. Shaw*, 1992 OK 21, ¶ 7, 826 P.2d 978, 981.

¶ 16 Finally, Plaintiff asserts that a violation of the Magnuson–Moss Act, as was subsequently found by the jury, *per se* constitutes a violation of the OCPA. We disagree. As previously set forth, the OCPA requires a plaintiff to prove the defendant engaged in an unlawful practice as defined at 15 O.S. 2001 § 753. Those unlawful practices include false or misleading representations; deceptive practices; practices which offend public policy and practices considered immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *Id.* The Magnuson–Moss Act contains no comparable unlawful practice requirement. *See* 15 U.S.C. § 2304(a).[2] Because the two causes of action contain dissimilar elements, we reject Plaintiff's argument.

¶ 17 Upon *de novo* review, we conclude Plaintiff failed to demonstrate a prima facie

**2.** The Magnuson–Moss Act sets certain minimum federal standards for consumer product warranties. Among other things, the Act provides for a private right of action by consumer purchasers against manufacturers or retailers who fail to comply with the terms of a written warranty. 15 U.S.C. § 2310(d)(1). The Act also provides in relevant part:

case for recovery under his OCPA claim. Accordingly, we hold the trial court correctly directed a verdict in favor of DaimlerChrysler.

## B. Attorneys' Fees

¶ 18 As his final assignment of error, Plaintiff contends the trial court abused its discretion by denying, in full, his application for attorneys' fees. We agree. The Magnuson–Moss Act provides that a prevailing plaintiff:

> may be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of cost and expenses (including attorneys' fees based on actual time expended) determined by the court to have been reasonably incurred by the plaintiff for or in connection with the commencement and prosecution of such action, unless the court in its discretion shall determine that such an award of attorneys' fees would be inappropriate.

15 U.S.C. § 2310(d)(2).

¶ 19 An award of attorneys' fees under the Magnuson–Moss Act is not automatic. *Hines v. Chrysler Corp.*, 971 F.Supp. 212, 214 (E.D.Pa.1997). Rather, the party seeking fees bears the burden of proving, by satisfactory evidence, the hours worked and rates charged in the fee request were reasonably expended. *Id.; Hatfield v. Oak Hill Banks*, 222 F.Supp.2d 988, 990 (S.D.Ohio 2002). The trial court has a great deal of discretion to adjust the fees when opposing counsel makes specific challenges thereto. *Hines*, 971 F.Supp. at 214. Finally, the determination of the reasonableness of an attorneys' fee "is a matter addressed to the sound discretion of the trial court [and] will not be reversed absent an abuse of discretion." *Tibbetts v. Sight 'n Sound Appliance Centers, Inc.*, 2003 OK 72, ¶ 3, 77 P.3d 1042, 1046.

> [I]f the product (or component part thereof) contains a defect or malfunction after a reasonable number of attempts by the warrantor to remedy defects or malfunctions in such product, such warrantor must permit the consumer to elect either a refund for, or replacement without charge of, such product or part (as the case may be).

*Id.* at § 2304(a)(4).

¶ 20 In the present case, Plaintiff sought approximately $23,000.00 in attorneys' fees and nearly $3,000.00 in costs. The only witness to testify at the fee hearing was Plaintiff's expert, who opined the facts under both of Plaintiff's theories of recovery were identical and the work expended prosecuting those theories would have been the same regardless of whether the OCPA claim was submitted to the jury. The trial court specifically found both the hourly rate and the number of hours spent on the litigation were reasonable. However, Plaintiff's expert testified he did not attempt to determine how much of the claimed attorneys' time was devoted to a separate claim against Daimler-Chrysler Financial Company, L.L.C. and Plaintiff's counsel candidly conceded that he did not expect to receive 100% of his request. Although both parties urged the court to award a percentage of the requested attorneys' fees (defense counsel also alternatively sought outright denial or another hearing), the trial court wholly denied the fee request. The court did, however, award Plaintiff all of his proposed costs.

¶ 21 A similar set of facts was presented in *Basselen v. General Motors Corp.*, 341 Ill. App.3d 278, 275 Ill.Dec. 267, 792 N.E.2d 498 (2003), and we find the Illinois court's opinion instructive here. In *Basselen*, the plaintiffs brought a Magnuson–Moss claim against the manufacturer of their van, as well as various other claims against the manufacturer, car dealership and finance company. The plaintiffs prevailed on their Magnuson–Moss claim and sought attorneys' fees, which the trial court denied in full.

¶ 22 Quoting extensively from *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), the *Basselen* court held that attorney time spent on claims sufficiently related to the Magnuson–Moss claim is compensable. *Basselen*, 341 Ill.App.3d 278, 275 Ill.Dec. 267, 792 N.E.2d at 510. As the Supreme Court noted in *Hensley*, in some cases:

> the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide

the hours expended on a claim-by-claim basis.

*Hensley*, 461 U.S. at 434–5, 103 S.Ct. at 1940.

¶ 23 The trial court in *Basselen* faced the same challenge presented to the trial court here: "[T]he documentation submitted by plaintiffs in support of their request for attorney fees is largely inadequate.... [Some] entries contain insufficient information to determine what sorts of work plaintiffs' counsel was performing." *Basselen*, 341 Ill.App.3d 278, 275 Ill.Dec. 267, 792 N.E.2d at 510. Both in *Basselen* and here, the trial court rejected the fee request in whole. And, as found by the appellate court in *Basselen*, we similarly hold that the trial court "[p]roceeding in this manner was improper." *Id.* Focusing on the type of work actually performed during the various times, rather than looking at the claims as a whole:

> is particularly appropriate where claims are interrelated and some work may be related to the case as a whole, other work to a compensable claim, and yet other work to a claim for which fees cannot be recovered. We believe considering each entry in itself, rather than in the context of a particular claim or a petition as a whole, "is more in tune with the realities of litigations."

*Id.* at 510–11 (citation omitted). The trial court erred in rejecting Plaintiff's fee petition as a whole, where many individual entries therein "are clearly compensable." *Basselen*, 341 Ill.App.3d 278, 275 Ill.Dec. 267, 792 N.E.2d at 511. We therefore remand this issue to the trial court for reconsideration of Plaintiff's fee application consistent with this opinion.

### III. DAIMLERCHRYSLER'S CLAIMS ON APPEAL

#### A. Opportunity to Cure Under Magnuson–Moss Act

¶ 24 As its first counter-proposition of error, DaimlerChrysler asserts the trial court erred in overruling its motion for a directed verdict on Plaintiff's Magnuson–Moss claim. As set forth above, a motion for a directed verdict presents "the question of whether there is any evidence to support a judgment

for the party against whom the motion is made." *Woods,* 1988 OK 105 at ¶ 8, 765 P.2d at 773. The Magnuson–Moss Act imposes a duty of notification on the consumer as a condition of securing any remedy provided for in the Act. 15 U.S.C. § 2304(b)(1). DaimlerChrysler contends there is no evidence that Plaintiff ever gave the corporation an opportunity to cure any alleged defect in the truck's engine prior to seeking a remedy under the Act.

¶ 25 We hold that under the Magnuson–Moss Act the determination of whether a consumer has given reasonable notice of a claimed defect is for the trier of fact. *See Murray v. D & J Motor Co., Inc.,* 1998 OK CIV APP 69, ¶ 22, 958 P.2d 823, 828 (whether allegedly defective automobile failed to conform to sales contract sufficient to allow buyer to invoke revocation remedy presented question of fact for jury); *Oberg v. Phillips,* 1980 OK CIV APP 36, ¶ 12, 615 P.2d 1022, 1025 (what constitutes a reasonable time to remedy defect is a question of fact for jury). In the present case, Plaintiff took his truck to Johnson's of Kingfisher after it died and made DaimlerChrysler aware he considered the problem was due to a defect or malfunction. DaimlerChrysler then refused to correct the problem. Regardless of whether Plaintiff's pull-start attempt of the truck did or did not cause some damage to the engine, the fact remains the truck ceased operating before Plaintiff tried to restart it. We find this evidence sufficient for the jury to conclude Plaintiff gave notice of an alleged defect to DaimlerChrysler and gave the corporation an opportunity to correct the problem prior to seeking a remedy under the Act. Because the standard for deciding a motion for a directed verdict is identical to the standard for determining a motion for judgment notwithstanding the verdict (JNOV), *First Nat'l Bank in Durant v. Honey Creek Entertainment Corp.,* 2002 OK 11, ¶ 8, 54 P.3d 100, 103, we similarly reject DaimlerChrysler's proposition that the trial court erred in overruling its JNOV motion, which was based upon the same "lack of opportunity to cure" ground.

## B. Sufficiency of the Evidence to Support Magnuson–Moss Claim

¶ 26 As its next assignment of error, DaimlerChrysler contends the evidence is insufficient to support the jury's verdict on Plaintiff's Magnuson–Moss claim. Specifically, the corporation maintains Plaintiff failed to present any evidence that the engine overspeed was due to a defect in workmanship or materials. As a sub-proposition, DaimlerChrysler argues the trial court erred in allowing Plaintiff's expert to present inadmissible speculative evidence to the jury.

### 1. Testimony of Plaintiff's Expert

¶ 27 We first address admissibility of the testimony of Plaintiff's expert witness, Tracy Taggart. DaimlerChrysler argues Taggart should not have been permitted to testify because he could not give an opinion as to the exact cause of the overspeed. DaimlerChrysler also maintains Taggart failed to meet the standards set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). After a hearing was conducted, the trial court allowed Taggart to testify regarding possible causes of the engine overspeed, but prohibited him from giving an opinion based on a reasonable mechanical certainty regarding the actual cause of the damage. Taggart, a diesel mechanic for forty years, testified there are four different ways to overspeed a diesel engine: pull-starting, "load pushing" (both urged by DaimlerChrysler), a timing problem and, the most common way to overspeed an engine, "overfueling." Based upon his examination of the engine, Taggart stated he could not determine the cause of the damage because two key components were missing, nor could he rule out any possibilities based upon what he saw. However, when shown a picture of the engine before it was dismantled, Taggart noted an oil trail on the exhaust manifold, which he explained could have resulted from an overfuel caused by a defective turbo charger.

¶ 28 We first note that a *Daubert* inquiry is limited to circumstances where the expert's evidence is novel or where the reliability of an expert's method cannot be taken for granted. *Christian v. Gray,* 2003 OK 10,

¶ 11, 65 P.3d .591, 599–600; *Kumho Tire Co., Ltd. v. Carmichael,* 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). There is no evidence in this case that Taggart's testimony was either based upon some novel concept or that his examination methods and opinions were extraordinary. *Daubert* does not apply here.

¶ 29 "The qualification of an expert witness is generally within the sound discretion of the trial court [whose] determination will not be disturbed absent an abuse of discretion." *Williams Natural Gas Co. v. Perkins,* 1997 OK 72, ¶ 17, 952 P.2d 483, 489. For purposes of admissibility, it was not necessary that Taggart's testimony touch on the ultimate reason Plaintiff's engine failed. Title 12 O.S.2001 § 2702 provides, "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert ... may testify in the form of an opinion or otherwise." Taggart relayed technical knowledge regarding possible causes of the engine failure that arguably assisted the jury. We cannot say the trial court abused its discretion in permitting Taggart to testify as he did.

### 2. Evidentiary Sufficiency

¶ 30 Our standard of review regarding the sufficiency of the evidence is as follows:

In an action at law, a jury verdict is conclusive as to all disputed facts and all conflicting statements, and where there is any competent evidence reasonably tending to support the verdict of the jury, this Court will not disturb the jury's verdict or the trial court's judgment based thereon.... [T]he sufficiency of the evidence to sustain a judgment in an action of legal cognizance is determined by an appellate court in light of the evidence tending to support it, together with every reasonable inference deducible therefrom, rejecting all evidence adduced by the adverse party which conflicts with it.

*Florafax Int'l, Inc. v. GTE Mkt. Resources, Inc.,* 1997 OK 7, ¶ 3, 933 P.2d 282, 287 (citations omitted).

¶ 31 In *Universal Motors, Inc. v. Waldock,* 719 P.2d 254 (Alaska 1986), the court analyzed the shifting burden of proof in a Magnuson–Moss action. Once the consumer offers credible evidence that the defect is related to materials or workmanship, thus establishing a prima facie case of breach of warranty, the burden shifts to the warrantor to prove consumer abuse. *Id.* at 259. The Alaska court noted the specific language of 15 U.S.C. § 2304(c) "places the burden of proving owner abuse squarely on the warrantor." *Waldock,* 719 P.2d at 256. We agree.

¶ 32 At issue here is whether Plaintiff presented sufficient proof to establish a prima facie Magnuson–Moss case. DaimlerChrysler contends he did not, pointing to the fact Plaintiff's expert could not specifically identify how the engine damage occurred. A similar argument was made in *Genetti v. Caterpillar, Inc.,* 261 Neb. 98, 621 N.W.2d 529 (2001), a case brought under the Uniform Commercial Code and Nebraska's "lemon law." There, the manufacturers argued the trial court should have directed a verdict in their favor because the plaintiff "failed to provide an opinion with any reasonable degree of certainty regarding what caused the breakdowns and could not point to a specific defect in material and workmanship." *Genetti* at 540–1. The court then addressed the issue of whether a precise or specific defect must be proved in order to find that a product is defective.

¶ 33 "Of the few jurisdictions that have directly addressed the issue, the majority do not require proof of a specific defect under either the U.C.C. or a statutory scheme similar to the [Nebraska Lemon Laws]." *Id.* at 541, *citing inter alia Waldock; Mason v. Porsche Cars of North America, Inc.,* 688 So.2d 361 (Fla.App.1997) (a Magnuson–Moss Act case); and *Osburn v. Bendix Home Systems, Inc.,* 1980 OK 86, 613 P.2d 445 (an Oklahoma U.C.C. case). "Rather, it is generally held that a plaintiff is not required to prove the specific product defect and that the proof may be circumstantial in nature or inferred from the evidence." *Genetti,* 621 N.W.2d at 541. The Nebraska court concluded that a precise or specific defect need not be proved in order to find a product

defective either under the U.C.C. or Nebraska's Lemon Laws. "[P]roof that the warranted product is defective may be circumstantial in nature and may be inferred from the evidence." *Genetti*, 621 N.W.2d at 542.

■ ¶ 34 The Oklahoma Supreme Court, in addressing a breach of warranty claim under the U.C.C., held:

Identification of an existing defect is not essential to recovery upon express warranty. It is sufficient if, as here, the evidence shows, either directly or by permissible inference, that the goods were defective in their performance or function or that they otherwise failed to conform to the warranty.

*Osburn*, 1980 OK 86 at ¶ 7, 613 P.2d at 448. We hold this standard applies equally to claims brought under the Magnuson–Moss Act. "Problems arise when a consumer is required to prove that there are defects in specific materials or particular workmanship." *Waldock*, 719 P.2d at 259. "Placing the burden on the consumer to prove a precise defect is unfair and unconscionable since the dealer and manufacturer could tamper (whether intentionally or inadvertently) with the evidence." *Id. See* also *Mason*, 688 So.2d at 367 (forcing consumers to identify cause of defect unrealistically burdensome given technological complexities of modern automobiles).

■ ¶ 35 Applying the above standards to the present case, we hold Plaintiff presented sufficient evidence to establish a prima facie Magnuson–Moss case. He was not required to specifically identify a defect in the engine. His expert identified several possible causes for the engine damage, specifically noting the possibility of a "overfuel" based upon engine photographs, and Plaintiff testified regarding engine problems he experienced prior to the time the truck died. Based upon this evidence and the inferences permissibly drawn therefrom, we find it was reasonable for the jury to conclude the engine damage was not due to Plaintiff's improper use of the truck. Competent evidence supports the jury's verdict.

## C. Excessive Award

■ ¶ 36 As its final proposition of error, DaimlerChrysler contends the jury's award is excessive and unsupported by the evidence. We agree. State law governs the amount and type of damages which may be awarded for a violation of the Magnuson–Moss Act. *MacKenzie v. Chrysler Corp.*, 607 F.2d 1162, 1166 (5th Cir.1979). *See* also *Boyd v. Homes of Legend, Inc.*, 188 F.3d 1294, 1298 (11th Cir.1999); *Saval v. BL Ltd.*, 710 F.2d 1027, 1033 (4th Cir.1983). Under Oklahoma law, "[t]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted...." 12A O.S.2001 § 2–714(2).[3] In this case, both parties appear to agree the value of the truck "as warranted" was the price Plaintiff paid for the truck, $34,500.00. We also note, "[t]he purchase price of the damaged goods may be the best evidence of the value of the goods as warranted." 1 WHITE & SUMMERS, UNIFORM COMMERCIAL CODE, § 10–2 (4th ed.).

3. Plaintiff's jury was instructed in relevant part as follows:

You should not award Mr. Cline the full purchase price of the vehicle as damages. The measure of damages is the difference between the actual value of the truck as it was warranted to be and the actual value of the truck upon delivery. To determine the actual value of the truck you must subtract from the purchase price the amount of diminution in value of the truck as a result of Mr. Cline's use of the truck from the time he purchased it until he took the truck to Johnsons of Kingfisher for repair in March 2000.

To determine the diminution in value of the truck you should consider such things as the mileage of the truck and the evidence presented to you regarding the condition of the truck at the time Mr. Cline took the truck to Johnsons of Kingfisher for repair.

The jury was also instructed not to award Plaintiff anything for consequential or incidental damages. "Such limitation of liability for consequential damages is permitted under the Act, so long as the limiting language is conspicuous on the face of the warranty document. 15 U.S.C. § 2304(a)(3)." *Najran Co. for Gen'l Contracting and Trading v. Fleetwood Enter., Inc.*, 659 F.Supp. 1081, 1100 (S.D.Ga.1986). The warranty in this case specifically barred recovery for consequential and incidental damages, and Plaintiff does not question such exclusion on appeal.

¶ 37 White and Summers also state that under § 2–714(2), "A common objective measurement of the difference in value as is and as warranted is the cost of repair or replacement." *Id.* (footnotes omitted). The treatise noted only one found case in which a court rejected the cost of repair as a measure of damages under § 2–714(2). *Id.* at n. 5. "If a buyer accepts a truck with a defective radiator, a good measure of the difference between the value of the truck as warranted and its value as delivered is the price of a new radiator." *Id.*

 ¶ 38 In the present case, Plaintiff's jury was presented evidence that Daimler-Chrysler paid $12,100.00 to replace the truck's engine and the engine was running at the time the truck was sold at auction. Applying the above objective measurement to the present case, we conclude the only evidence of recoverable damages placed before the jury was the replacement cost of the engine. Plaintiff argues the jury could properly have considered the repair costs of $5,600.00 at the Colorado dealership and $3,000.00 at Johnson's of Kingfisher in arriving at its verdict. However, we hold Plaintiff is not entitled to recover the cost of truck repairs which were absorbed by Daimler-Chrysler as part of its warranty obligation. *Faulkingham v. Seacoast Subaru, Inc.,* 619 A.2d 987 (Me.1993). We find no competent evidence, nor reasonable inferences therefrom, to support the jury's award of $30,000.00.

## IV. CONCLUSION

¶ 39 On the basis of the foregoing, we hold the trial court correctly directed a verdict in favor of DaimlerChrysler on Plaintiff's OCPA claim. We also hold the trial court properly submitted Plaintiff's Magnuson–Moss claim to the jury and find competent evidence to support the jury's verdict on that cause of action. However, we conclude the trial court's total denial of Plaintiff's fee application was erroneous and we remand that issue for reconsideration consistent with this opinion. Finally, because the amount of the jury's award on Plaintiff's Magnuson–Moss claim is unsupported by competent evidence, we hold DaimlerChrysler is entitled to a new trial on that issue. Accordingly, this case is remanded to the trial court with directions to grant DaimlerChrysler's motion for new trial limited to determining the amount of damages only.

¶ 40 AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.

JOPLIN, P.J., concurs, and BUETTNER, C.J., concurs in result.