DECISION AND JUDGMENT ENTRY
{¶ 1} This appeal is from the March 1, 2007 judgment of the Lucas County Court of Common Pleas which granted summary judgment to appellees, Volkswagen of America, Inc., (Volkswagen), Ed Schmidt Pontiac-GMC, Inc. (Ed Schmidt), and Volkswagen Credit, Inc., (VW Credit), and denied summary judgment to appellant, Jane Roman. For the reasons that follow, we affirm the decision of the trial court. *Page 2 
 {¶ 2} On appeal, appellant presents the following sole assignment of error:
 {¶ 3} "The trial court committed reversible error by granting summary judgment in favor of Ed Schmidt Pontiac-GMC and Volkswagen of America."
 {¶ 4} In reviewing a motion for summary judgment, an appellate court reviews the grant of summary judgment de novo, applying the same standard used by the trial court. Village of Grafton v. Ohio EdisonCo. (1996), 77 Ohio St.3d 102, 105. Accordingly, an appellate court reviews the same evidence that was properly before the trial court.Am. Energy Serv., Inc. v. Lekan (1992), 75 Ohio App.3d 205, 208. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ.R. 56(C).
 {¶ 5} A "material" fact is one which would affect the outcome of the litigation under the applicable substantive law. Russell v. InterimPersonnel, Inc. (1999), 135 Ohio App.3d 301, 304; Needham v. ProvidentBank (1996), 110 Ohio App.3d 817, 826. A dispute is "genuine" if the evidence would allow reasonable minds to find for the nonmoving party.Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248.
 {¶ 6} The party seeking summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of any genuine issue of material fact as to the essential elements of the nonmoving party's claims or defenses. Dresher v. Burt (1996), 75 Ohio St.3d 280, *Page 3 
292. Once the moving party's burden has been satisfied, the burden shifts to the nonmoving party, as set forth in Civ.R. 56(E). Id. at 293. The nonmoving party may not rest upon the mere allegations and denials in the pleadings, but instead must point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact.Henkle v. Henkle (1991), 75 Ohio App.3d 732, 735. Any doubt is to be resolved in favor of the nonmoving party. Viock v. Stowe-WoodwardCo. (1983), 13 Ohio App.3d 7, 12.
 {¶ 7} In viewing the evidence in a light most favorable to appellant, the nonmoving party, we find that the following facts are established in the record. On June 21, 2002, appellant leased a 2002 Volkswagen Passat 1.8t from Ed Schmidt. Ed Schmidt is an authorized dealer of Volkswagen vehicles and is located in Perrysburg, Ohio. Appellant's lease was to expire after four years and 60,000 miles. VW Credit financed appellant's lease.
 {¶ 8} Volkswagen provided an express written "Limited New Vehicle Warranty" promising to correct by repair or replacement most "manufacturer's defects in material or workmanship." Volkswagen also provided an express written "Limited Powertrain Warranty" promising to correct "manufacturer's defects in material or workmanship" for the engine, transmission, and drivetrain. Both warranties contained express written exclusions. One such exclusion titled "Damage or Malfunctions Due to Lack of Maintenance" states: *Page 4 
 {¶ 9} "This warranty does not cover damage or malfunctions which are due to failure to follow recommended maintenance requirements as set forth in the Volkswagen Owner's Manual and the Maintenance Booklet. Your dealer will deny warranty coverage unless you present to the dealer proof in the form of service or repair orders that all scheduled maintenance was performed in a timely manner."
 {¶ 10} On February 7, 2005, appellant contacted Ed Schmidt due to the illumination of the engine/oil warning light in her vehicle. After bringing her vehicle to Ed Schmidt for inspection, an Ed Schmidt employee informed appellant after 15 minutes of waiting that appellant's engine had sustained irreparable sludge damage[1] and would require a major engine overhaul. Due to appellant's warranty exclusion, Ed Schmidt asked appellant to provide evidence of proper maintenance.
 {¶ 11} Appellant's vehicle had approximately 40,000 miles when her engine/oil warning light appeared. According to appellant's owner's manual, she was required to have the oil changed every 5,000 miles. Appellant provided documented proof of only *Page 5 
four oil changes.[2] Appellant attests to having performed all the required oil changes, but states that she is unable to produce documented proof of all the oil changes because the business where she received the balance of the oil changes closed. When appellant could not provide documentation of compliance with the owner's manual maintenance schedule, Ed Schmidt denied warranty coverage and told appellant that the damage would cost approximately $7,000. Appellant refused to pay and her vehicle has yet to be repaired.
 {¶ 12} In addition to its new vehicle and powertrain warranties, Volkswagen had instituted an "Oil Sludge Limited Warranty Extension" and a "One-Time Only Oil Sludge-Related Engine Repair or Replacement for Vehicles that Fall Out of the Scope of the Oil Sludge Extended Warranty." Under the extended warranty, damage due to sludge would be repaired at 100% for eight years, unlimited miles, as long as the owner or lessee could provide documentation of regular oil changes. Under the "one-time only" oil sludge repair provision, the service manager of an authorized dealer could perform up to $2,000 in repairs on Volkswagen vehicles where the owner or lessee could demonstrate a good faith pattern of maintenance through documentation of a certain number of oil changes. The Volkswagen guidelines for this "one-time only" oil sludge repair provision require documentation of five oil changes for a vehicle with 40,000 miles to receive the $2,000 in repairs if the damage was caused by sludge buildup. *Page 6 
 {¶ 13} On appeal, appellant asserts that the trial court committed reversible error by granting summary judgment in favor of Ed Schmidt and Volkswagen because a genuine issue of material fact exists. In particular, appellant argues that she provided expert testimony that refuted appellees' assertion that her engine was damaged by oil sludge and that this testimony created a genuine issue of material fact concerning whether the engine malfunction was caused by a lack of maintenance on her part. Alternatively, appellant argues that requiring written service or repair orders to comply with Volkswagen's warranty requirement imposes an unreasonable duty on the consumer and is contrary to law.
 {¶ 14} Pursuant to R.C. 1302.26(A)(1), a seller's "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." Further, a seller's "description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." R.C. 1302.26(A)(2). "Under Ohio law, the party asserting a breach of warranty claim carries the burden of proving that a defect exists in the product sold by the manufacturer, and that the defect existed at the time the product left the manufacturer's control."Conservation Load Switch, Inc. v. Ohio Univ., Ct. of Cl. No. 2002-06031, 2004-Ohio-1472, ¶ 14, citing McDonald v. Ford Motor Co. (1975),42 Ohio St.2d 8, 10.
 {¶ 15} Appellees, as the moving parties, have the burden of demonstrating an absence of any genuine issue of material fact as to the essential elements of appellant's *Page 7 
claims, including breach of warranty, violations of Section 2301, Title 15, U.S. Code (the Magnuson-Moss Warranty Act), and violations of the Ohio Consumer Sales Practices Act, R.C. 1345.02 and 1345.03. Because appellant's statutory claims all arise out of the breach of warranty claim, appellees must demonstrate that no genuine material issue exists as to the elements of a breach of warranty claim.
 {¶ 16} Appellees argued that they were entitled to summary judgment on appellant's breach of warranty claims because appellant could not establish that the damage to the engine was covered by warranty, or that any defect existing at the time the car left appellees' control caused the engine malfunction. Specifically, appellees asserted that the engine damage was caused by oil sludge that built up due to a lack of maintenance, and that such damage was excluded from coverage unless appellant could establish compliance with the engine's maintenance schedule, which she could not.
 {¶ 17} In support of their motion, appellees submitted a copy of the lease agreement, warranty documentation, and affidavits from Ed Schmidt employees and Volkswagen's Product Liaison Engineer, Frederic Boettcher. In his affidavit, Boetcher, an experienced mechanic, stated that there was sludge residue inside the valve cover, sludge buildup in the bottom of the oil pan, scoring[3] damage to the camshaft bearings "from sludge," which is considered "serious engine damage," and sludge blockage of the oil pick-up tube's filter. Boetcher stated that this damage was caused by appellant's failure to change the oil at prescribed intervals. Boetcher attested that the engine was *Page 8 
"ruined" and that "[t]he proper repair for damage of this severity is to replace the entire engine and sundry parts," at a cost of approximately $7,000.
 {¶ 18} We find that appellees met their initial burden of informing the trial court of the basis for their motion and identifying portions of the record that demonstrate an absence of any genuine issue of material fact as to the essential elements of appellant's claims. SeeDresher, supra. Civ.R. 56(E) then requires appellant to "point to or submit some evidentiary material that demonstrates a genuine dispute over a material fact." Henkle supra at 735. To satisfy the requirements of Civ.R. 56(E), appellant submitted her own affidavit and an affidavit of Bill Hincher, a self-employed mechanic and owner of an automotive repair shop.
 {¶ 19} In appellant's affidavit, she states that she performed all the required maintenance of her vehicle, including changing the oil every 5,000 miles. Hincher, an experienced mechanic, stated in his affidavit that appellant's engine was consistent with any well-maintained engine, did not have any "unreasonable sludge" present, and that the "engine is consistent with the proper quantity and quality of oil being used and changed every 5,000 miles." Hincher also stated that the original self-diagnosis computer report conducted by an Ed Schmidt employee generated eight different "faults" in the engine, none of which related to sludge damage. Hincher, however, stated that the computer information was deleted and, therefore, the information provided to Hincher was of "no value." *Page 9 
 {¶ 20} Appellant argues that Hincher's affidavit, which stated that there was no unreasonable oil sludge present, established a genuine issue of material fact regarding the cause of the break down. Appellant is correct that she refuted appellees' allegation that there was an unreasonable amount of oil sludge build up in the engine; however, we find that appellant failed to offer any evidence that oil sludge was not the cause of the engine's malfunction. An expert's opinion that there was not an unreasonable amount of oil sludge in the engine does not equate to the expert finding that the damage to the engine was not caused by oil sludge. Hincher suggested that there were eight different "faults" discovered with the engine, but did not state that any of these faults caused the engine failure. Hincher also never stated what caused the engine light to illuminate, what damage was evident in the engine, or what repairs the vehicle required.
 {¶ 21} Appellant additionally argues that the fact that her vehicle broke down alone is sufficient to sustain her burden of going forward in a breach of express warranty claim. In support for her contention, appellant cites Universal Motors v. Waldock (Alaska 1986), 719 P.2d 254. Our reading of Waldock, however, points to a different conclusion. InWaldock, the Alaska Supreme Court held that a consumer car-owner could maintain a recovery of damages from a car manufacturer under the Magnuson-Moss Act where the consumer advanced a plausible explanation for an engine failure. Id. at 259. Although the burden is not on the consumer to show the precise technical explanations behind a malfunction, the consumer must still point to some evidence that the defect is materials or workmanship related. Id. at 258-259. Once the consumer *Page 10 
satisfies this burden, then the burden shifts to the warrantor to prove consumer abuse under the Magnuson-Moss Act. Id. at 259.
 {¶ 22} In this case, appellant failed to offer any evidence that the engine's malfunction was due to a defect in manufacturing that was present at the time the vehicle left Volkswagen's control. Even if we assume that appellant properly maintained her vehicle with regular oil changes, this assumption does not create an inference that the engine's malfunction was Volkswagen's fault. Based on the foregoing, we find that appellant failed to establish a genuine issue of material fact with respect to what caused the engine to malfunction or whether the damage to her vehicle was caused by manufacturer defect.
 {¶ 23} Appellant, however, additionally argues that Volkswagen's "Damage or Malfunctions Due to Lack of Maintenance" exclusion to warranty coverage "imposes an unreasonable duty on the consumer and is contrary to law." Specifically, appellant asks us to reverse the trial court's grant of summary judgment on policy grounds.
 {¶ 24} The policy behind the Ohio Consumer Sales Practices Act was to protect consumers from unfair and deceptive practices of suppliers of consumer goods. Renner v. Derin Acquisition Corp. (1996),111 Ohio App.3d 326, 340. Appellant was not subjected to any unfair or deceptive practices. She was made aware of her duties under the lease and warranty. The trial court found that the duty to properly maintain a vehicle and provide documentation of such maintenance is reasonable when warranting goods that can sustain severe damage when not properly maintained by the consumer. We find *Page 11 
no compelling reason put forth by appellant to suggest otherwise. Because appellant established no issue warranting reversal of summary judgment, we find appellant's sole assignment of error not well-taken.
 {¶ 25} The judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
Peter M. Handwork, J., Mark L. Pietrykowski, P.J., William J. Skow, J. CONCUR.
[1] According to Volkswagen's expert, Fredric Boettcher, oil sludge is a product of over-stressed oil in an engine. Oil that is stressed by contaminants and oxidation will break down into a thick gel that sticks to engine parts. As the sludge sticks, there is less good oil to circulate and lubricate the engine parts. This coating of gel also stores heat instead of releasing it which stresses the radiator and cooling system. The most common causes of oil sludge are using incorrect or substandard oil and waiting too long between oil changes.
[2] A vehicle with 40,000 miles would require eight separate oil changes in order to comply with the owner's manual requirement of having the oil changed every 5,000 miles.
[3] Boettcher described "scoring" as "metal damage caused by lack of lubrication." *Page 1