### In the Matter of the CONSERVATORSHIP OF David HARTSHORNE, a Disabled Person.

#### No. 44096.

Court of Appeals of Oklahoma, Division No. 1.

April 18, 1972.

Certiorari Denied June 19, 1972.

———◆———

Loren McCurtain, McAlester, for appellant.

William D. Mobley, Poteau; Bradley D. Jesson, Hardin, Jesson & Dawson, Fort Smith, Ark., for appellee.

ROMANG, Presiding Judge.

This is a conservatorship case under 58 O.S.Supp.1965, § 890.1 and following. On January 27, 1970, the trial court made and entered an order determining that Mrs. David Hartshorne, a lady ninety-five years of age, by reason of advanced age and physical disability, was unable to properly manage her property, and that conservators should be appointed, which were then appointed by the court. From said order and judgment, Mrs. David Hartshorne has appealed.

The appellant contends that the judgment of the trial court was not sustained by the evidence, and that the court erred in finding that she was unable to manage her property by reason of advanced age or physical disability.

The appellant points to evidence showing that her health is above average for a person ninety-five years of age; that she can read with the aid of glasses, and can read fine print with a magnifying glass; that she understands what she reads; that her hearing is only slightly impaired; that she can walk about and for some distance without assistance; that she purchases her own groceries and does her own cooking; that by having friends take her in their cars to places she needs to go, she can look after her own business.

However, the evidence also shows that Mrs. Hartshorne trusts everybody; that from time to time she would turn over large sums of cash to different friends and relatives without even taking a receipt, and in some instances her trust had been misplaced resulting in the loss of considerable sums of money. Mrs. Hartshorne distrusted banks, and at times had large sums of money on hand. At one time she had at her house the sum of $6,000.00 in twenty-dollar bills. At the time of the hearing, she had at least $2,000.00 in the hands of friends, whom she declined to name.

In 1959, Mrs. Hartshore conveyed all of her property to M. S., who was supposed to take care of her for the rest of her life and to fix up the family cemetery. Mrs. Hartshorne was asked if M. S. did the things he promised, and she answered as follows:

"A. No, not one thing. He robbed me. I give him $1,200.00."

The evidence further shows that she got her property back from M. S. by agreeing to let him keep one-half of her oil, gas and other mineral interests.

Another transaction indicative of Mrs. Hartshorne's method of doing business, as shown by the record, was her handing over to J. D. the sum of $7,000.00 in cash. In

regard to this money, she testified as follows:

"Q. Do you know what he did with the money?

"A. He said he put it in the bank—said in joint interest.

"Q. Joint interest with right of survivorship?

"A. Yes. He did write some checks—for two or three years he would write the checks—when he put it in there I said, 'J——, why not put some of it on interest and keep half of it.' I was working on this graveyard. He said all right. He was very agreeable because he could see ahead."

She also testified that she quit doing business with J. D. when he started some trouble.

In June, 1969, Mrs. Hartshorne deeded her real property and transferred a $10,000.00 certificate of deposit to a young neighbor couple. Following inquiry by Mrs. Hartshorne's daughters, the young neighbor couple conveyed the real property back to Mrs. Hartshorne, and retransferred the certificate of deposit to her.

One witness testified that he had recently leased fifteen acres of land from Mrs. Hartshorne for the sum of $20.00 per year for a period of ten years. The land was valuable, being located on the edge of Poteau. There were other transactions mentioned in the record wherein Mrs. Hartshorne had apparently been overreached, and one of those was a coal lease on some of her land, which turned out to be different than she thought.

In reading the testimony of Mrs. Hartshorne, we note that she repeatedly states that she trusts everybody at least until they have taken advantage of her. Even at the time of hearing, she had large sums of money in the hands of friends and acquaintances with no guarantee that the money would be returned if she needed it. From the evidence, it appears that Mrs. Hartshorne is likely to be deceived or imposed upon by artful or designing persons, and that she had already lost large sums of money by trusting everybody.

58 O.S.Supp. 1965, § 890.2 reads as follows:

"If, after a full hearing and examination upon such petition, it appears to the county court that the person in question is, by reason of advanced age or physical disability, unable to manage his property, the judge must appoint a conservator of his estate."

In the case of In re Blaine's Guardianship, 195 Okl. 205, 156 P.2d 583, the court syllabus held:

"Any person who, though not insane, is by reason of old age, disease, weakness of mind, or from any other cause, unable, unassisted, to properly manage and take care of himself or his property and by reason thereof would be likely to be deceived or imposed upon by artful or designing persons, may be declared incompetent."

In the case of In re Washam's Estate, 364 P.2d 896 (Okl.1961), the court syllabus held:

"Credibility of witnesses and effect and weight to be given to conflicting or inconsistent testimony are questions of fact to be determined by trier of facts, whether court or jury, and are not questions of law for the Supreme Court on appeal."

After reading all the record herein, this court is of the opinion that the judgment of the trial court is sustained by substantial evidence.

Judgment affirmed.

BAILEY and BOX, JJ., concur.