131 P.3d 145 (2005)
2006 OK CIV APP 25
Ricki Royce HOLLIS, Plaintiff/Appellee,
v.
STATE of Oklahoma ex rel., DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellant.
No. 102,072.
Court of Civil Appeals of Oklahoma, Division No. 1.
November 14, 2005.
Certiorari Denied February 21, 2006.
Doug Friesen, The Law Offices of Doug Friesen, P.C., Oklahoma City, OK, for Plaintiff/Appellee.
A. DeAnn Taylor, Department of Public Safety, Oklahoma City, OK, for Defendant/Appellant.
Released for Publication by Order of the Court of Civil Appeals of Oklahoma, Division No. 1.
Opinion by BAY MITCHELL, Judge.
¶ 1 Ricki Royce Hollis was arrested on September 29, 2004 for driving under the influence of alcohol, and the State of Oklahoma, ex rel. Department of Public Safety (DPS) revoked his license for 180 days for refusing to submit to chemical testing. The district court, however, set aside the revocation by directed verdict and reinstated Hollis' license. DPS appeals from that directed verdict.
¶ 2 The arresting officer, Trooper Timmons, was the only person to testify for DPS. Timmons testified that he read the entire informed consent form to Hollis five times from the time he arrested Hollis and placed him in the police car to the time Hollis was processed and placed in the jail cell. Hollis, however, never replied when asked whether he would take the test. Hollis was conscious and did not have any apparent physical or *146 mental disabilities, other than the fact that he was crying most of the time.
¶ 3 After DPS rested, Hollis moved for a directed verdict (which he designated a motion for dismissal) on the ground that he was incapable of refusing to submit to the test, because he never understood the informed consent. The district court granted the directed verdict and reinstated Hollis' license.[1] The court emphasized that DPS failed to show Hollis had a "conscious awareness and understanding for that refusal of taking the test." (emphasis added). The court also noted its concern that Trooper Timmons had to read the informed consent five times. Now, on appeal, DPS contends it proved Hollis refused to submit to the chemical test. DPS also contends the trial court erred in placing the burden on DPS to prove Hollis had a conscious awareness and understanding of the implied consent. Instead, DPS argues Hollis had the burden to prove he was incapable of consenting.
¶ 4 On appeal from orders of implied consent revocations, an appellate court will not reverse the district court's findings unless they are erroneous as a matter of law or lack sufficient evidentiary foundation. Abdoo v. State of Oklahoma, ex rel. Dept. of Public Safety, 1990 OK CIV APP 2, ¶ 11, 788 P.2d 1389, 1393. We review a trial court's grant of a directed verdict de novo. Cline v. DaimlerChrysler Co., Corp., 2005 OK CIV APP 31, ¶ 9, 114 P.3d 468, 473. A motion for directed verdict presents the question of whether there is any evidence to support a judgment for the non-moving party. Id. In ruling on a directed verdict, the trial court must consider as true all the evidence and all the reasonable inferences therefrom in favor of the party opposing the motion and disregard any conflicting evidence. Id. The motion should be denied when there is a controverted question of fact as to which reasonable minds could differ, but should be granted if the non-moving party failed to establish a prima facie case. Id. We find the district court's ruling was erroneous as a matter of law because it improperly placed the burden of proof on DPS to prove Hollis was incapable of refusing to submit to the chemical test. Further, the trial court improperly granted a directed verdict where DPS established its prima facie case for revoking Hollis' license.
¶ 5 The implied consent statute provides that by driving a motor vehicle on a public highway, the operator is deemed to consent to taking a blood or chemical test to determine the alcoholic content of his or her blood. 47 O.S. Supp.2004 § 751(A). The civil penalty for violating the implied consent statute is in 47 O.S. Supp.2004 § 754(A), which provides that any arrested person "who has refused to submit to a breath or blood test" must surrender his or her driver's license to the arresting officer. However, § 751(D) provides two exceptions:
Any person who is unconscious or otherwise incapable of refusing to submit to a test of such person's blood or breath to determine the alcohol concentration thereof,. . . shall be deemed not to have withdrawn the consent provided by subsection A of this section, and such test may be administered as provided herein. (emphasis added).
The primary factual issue in this case was whether Hollis was incapable of refusing to submit to the chemical test. If so, he would be deemed to have impliedly consented to be tested and his license would not be subject to revocation. To determine this factual issue, we must determine whether DPS presented sufficient evidence to establish its prima facie case and avoid a directed verdict.
¶ 6 To prove revocation is proper based on a licensee's refusal to submit to a breath or blood test, the State must prove the following four elements by a preponderance of the evidence:
1) the officer had reasonable grounds to believe the person had been operating or was in actual physical control of a vehicle upon the public roads . . . or other public place of this state while under the influence of alcohol . . . or the combined influence of alcohol and any other intoxicating substance as prohibited by law;

*147 2) the person was placed under arrest;
3) the person refused to submit to the test or tests; and
4) the person was informed that driving privileges would be revoked or denied if the person refused to submit to the test or tests.
47 O.S. Supp.2004 § 754(F) (emphasis added); Burris v. State of Oklahoma, ex rel. Dept. of Public Safety, 1989 OK CIV APP 64, ¶ 11, 785 P.2d 332, 335 (stating burden of proof in license revocation proceedings is preponderance of the evidence).
¶ 7 Trooper Timmons initiated the traffic stop because Hollis was traveling at a high rate of speed and weaving in and out of his lane. He noticed Hollis' eyes were watery and glassy and his speech was slow and slurred. Hollis admitted to having four drinks and taking medication, and he failed the field sobriety tests. Trooper Timmons then placed Hollis under arrest and read him the Implied Consent form a total of five times while he was in the car and at the jail.[2] Hollis never responded in any way to the requests to take the test. This testimony satisfies elements one, two and four. The only contested element is whether Hollis refused to submit to the chemical test.
¶ 8 We agree with DPS that under Oklahoma law, Hollis' silence can be a refusal to submit to the chemical test. The Oklahoma Supreme Court has held that the implied consent statute "does not sanction a qualified or conditional refusal. The statute requires a licensee to make a choice. ..." Robertson v. State of Oklahoma, ex rel. Department of Public Safety, 1972 OK 126, ¶ 22, 501 P.2d 1099, 1104 (emphasis added). The Court noted the statute "calls for a simple yes or no to the request for submission.... [B]ecause of the remedial intent of the statute anything less than an unqualified consent by the licensee to the requested test constitutes a refusal to do so." Id., ¶ 23, 501 P.2d at 1104. (emphasis added). Allowing the licensee to negotiate or make qualified decisions would impair the effectiveness of the implied consent law because of the rapidity with which alcohol is metabolized by the body. Id., 501 P.2d at 1104. Similarly here, allowing a licensee to simply stand mute and refuse to answer would effectively nullify the implied consent law.
¶ 9 Case law supports the conclusion that a nonverbal rejection is a refusal to submit. In Application of Kunneman, 1972 OK CIV APP 4, 501 P.2d 910, 911 (released by the Oklahoma Supreme Court for official publication), the court found the licensee had refused to submit to the breath test by his nonverbal conduct of sucking on the breathalyzer machine instead of blowing into it as he was instructed. Id., ¶¶ 2,7, 501 P.2d at 911. Even though the licensee had previously agreed to take the test, the court held that his repeated conduct was a nonverbal refusal. Id., ¶ 7, 501 P.2d at 911. Here, Hollis refused to submit to the tests by his nonverbal conduct of simply failing to respond. This satisfies the final element of the State's prima facie case.
¶ 10 Hollis contends, however, that DPS must prove he had the capacity to consent to the test as part of its prima facie case. We disagree. The burden of proving incapacity to refuse to submit to the test rests with the licensee if, and after, DPS has established its prima facie case. If this were a criminal proceeding, Oklahoma law clearly provides the defendant would have the burden of proving incapacity to refuse to submit to the breath or blood tests under the same statute, 47 O.S. Supp.2004 § 751(D). E.g., Cox v. State, 1964 OK CR 71, ¶ 25, 395 P.2d 954, 962 (burden of showing inability to give consent by virtue of an injury resulting from *148 an automobile accident is on the defendant to suppress results of test); Watts v. State, 1979 OK CR 117, ¶ 10, 602 P.2d 229, 231 (affirming conviction where consent was given while defendant was in hospital with a lacerated tongue and was in great pain, and defendant presented no medical testimony to show injury prevented him from giving consent). Several criminal cases have also held expert medical testimony is usually necessary to prove the defendant was unable to consent at the time the sample was taken. Lorenz v. State, 1965 OK CR 111, ¶ 8, 406 P.2d 278, 280-81 (defendant's motion to suppress should have been granted where uncontroverted medical testimony showed defendant was unconscious and could not have given consent); Marr v. State, 1987 OK CR 173, ¶ 35, 741 P.2d 884, 885 (defendant who was in an accident and was read the informed consent form while in the hospital failed to meet his burden where he failed to present medical testimony of his inability to consent). Similarly, in Department of Public Safety v. Krahn, 1977 OK 168, ¶ 12, 569 P.2d 982, 984, the Oklahoma Supreme Court relied on uncontradicted medical testimony that the licensee was in a semi-conscious state due to a fall to find the licensee was not mentally capable of refusing the chemical test.
¶ 11 There is no reason to shift this burden of proof to the State in an administrative proceeding. If licensees who are fully conscious, with no obvious physical or mental impairments, as was the case with Hollis, believe they were incapable of refusing to submit to the tests, the burden of proof is theirs. This holding is in line with other states that have also placed the burden on the licensee in administrative licensee revocation proceedings to prove they were incapable of refusing to consent. E.g., Com., Dept. of Transp., Bureau of Driver Licensing v. Wicks, 136 Pa.Cmwlth. 322, 583 A.2d 21, 23 (1990) (holding burden is on licensee to show he was incapable of refusing to consent by presenting medical testimony unless there is an obvious medical infirmity; incapacity by intoxication is not sufficient).
¶ 12 The trial court erred as a matter of law by requiring DPS to prove Hollis was capable of refusing to submit to the breath test where he was conscious and had no obvious injury or disability. Further, the court erred in granting a directed verdict where DPS met its burden and established a prima facie case against Hollis. Thus, this case is reversed and remanded for a new trial.
¶ 13 REVERSED AND REMANDED.
ADAMS, P.J., and BELL, J., concur.
NOTES
[1] The Journal Entry of Judgment does not refer to the fact that the court granted a directed verdict after DPS rested. However, that fact is clear from the transcript.
[2] Trooper Timmons read the Implied Consent form to Hollis immediately after arresting him, then waited a few minutes and re-read the Consent form and asked Hollis if he understood. The trooper said Hollis was emotional and was crying because, according to Hollis, his son had just spoken after waking from a coma. Once at the jail but while still in the car, when Hollis had calmed down, Trooper Timmons read the form for a third time. The Trooper read the form for a fourth time inside the jail before he left to fill out paperwork. When he returned, he learned Hollis had become combative and argumentative and had been moved to a cell. Trooper Timmons then read the form for a fifth time to make sure Hollis understood what was being read to him. Timmons admitted on cross-examination that nothing had changed as far as Hollis understanding between the fourth and the fifth reading.