OSCN Found Document:MARTINEZ v. STATE ex rel. DEPT. OF PUBLIC SAFETY

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 MARTINEZ v. STATE ex rel. DEPT. OF PUBLIC SAFETY
2014 OK CIV APP 17
Case Number: 111116
Decided: 11/05/2013
Mandate Issued: 02/20/2014
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2014 OK CIV APP 17, __ P.3d __

RALPH R. MARTINEZ, Plaintiff/Appellant,
v.
STATE OF OKLAHOMA ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
OKLAHOMA COUNTY, OKLAHOMA

HONORABLE JAMES B. CROY, TRIAL JUDGE

AFFIRMED

John E. Hunsucker, A. DeAnn Taylor, Oklahoma City, Oklahoma, for Plaintiff/Appellant
Douglas R. Young, OKLAHOMA DEPARTMENT OF PUBLIC SAFETY, Oklahoma City, Oklahoma, for Defendant/Appellee

P. THOMAS THORNBRUGH, PRESIDING JUDGE:

¶1 Ralph R. Martinez appeals the decision of the district court upholding the revocation of Martinez's driver's license for intoxication while in actual physical control of a vehicle. On review, we affirm the decision of the district court.

BACKGROUND

¶2 On October 1, 2011, the Midwest City police received a citizen's report of a possible drunk driver. This report was transmitted over the police radio. The call was assigned to Officer Justin Stevenson. Another officer who had heard the call, Roland Branham, noticed a car sitting about five feet from the curb on a city street. Upon investigating, Officer Branham found Appellant Martinez apparently asleep in the vehicle. Branham woke Martinez, and asked him to exit the vehicle. Branham noted that Martinez attempted to exit the car while his seat belt was still fastened and that he had the car keys in his hand. Branham also noted a strong odor of alcohol in the vehicle. When Martinez exited the vehicle, Branham noted signs of intoxication. Officer Stevenson and another officer, Lieutenant Simonson, then arrived on the scene. Branham and Stevenson attempted to administer a sobriety test, but Martinez fell down while the test was being administered. Officer Branham then handcuffed Martinez and told him he was under arrest.

¶3 Officer Branham had already worked a 10-hour shift, and handed the matter to Stevenson. Stevenson checked to see that Martinez's vehicle was drivable, and observed signs of intoxication. He then placed Martinez in his patrol car, and told him he was under arrest. Stevenson transported Martinez to the Midwest City Jail, where Martinez agreed to submit to alcohol testing. The test showed that Martinez's blood alcohol was above the legal limit. Stevenson seized Martinez's license and made out the sworn report required by 47 O.S.2011 § 754. Martinez's license was revoked. Martinez requested an administrative hearing pursuant to 47 O.S.2011 § 754(D), at which the revocation of his license was upheld. Martinez then appealed the matter to the district court, which heard testimony from Officers Branham and Stevenson in a de novo proceeding on the merits.

¶4 The district court upheld the revocation of Martinez's license. Martinez now appeals that decision, arguing primarily that the initial revocation was void because of defects in the sworn report required by 47 O.S.2011 § 754, and because Stevenson lacked probable cause for his warrantless arrest of Martinez.

STANDARD OF REVIEW

¶5 "On appeal from orders of implied consent revocations, an appellate court will not reverse the district court's findings unless they are erroneous as a matter of law or lack sufficient evidentiary foundation." Hollis v. State ex rel. Dept. of Public Safety, 2006 OK CIV APP 25, ¶ 4, 131 P.3d 145, 146.

ANALYSIS

I. WHO MUST MAKE THE SWORN REPORT
REQUIRED BY 47 O.S.2011 § 754?

¶6 Martinez's first allegations of error argue that the officer's sworn report submitted pursuant to 47 O.S.2011 § 754(C) is facially defective unless made by the "arresting officer," and that Officer Stevenson did not qualify as an arresting officer in this context. This argument presents a first impression question of law regarding the terms "arresting officer," "officer," and "a law enforcement officer" as they are used in 47 O.S.2011 § 754.

A. The Structure of § 754

¶7 Section 754 uses the phrase "arresting officer" once, in subsection (A):

A. Any arrested person [who tests positive for an illegal alcohol level] . . . shall immediately surrender his or her driver license, permit or other evidence of driving privilege to the arresting law enforcement officer. The officer shall seize any driver license, permit, or other evidence of driving privilege surrendered by or found on the arrested person during a search. (Emphasis added).

The statute uses the phrase "the officer" rather than "arresting officer" in the next paragraph:

B. If the evidence of driving privilege surrendered to or seized by the officer has not expired and otherwise appears valid, the officer shall issue to the arrested person a dated receipt for that driver license, permit, or other evidence of driving privilege on a form prescribed by the Department of Public Safety. This receipt shall be recognized as a driver license and shall authorize the arrested person to operate a motor vehicle for a period not to exceed thirty (30) days. The receipt form shall contain and constitute a notice of revocation of driving privilege by the Department effective in thirty (30) days. The evidence of driving privilege and a copy of the receipt form issued to the arrested person shall be attached to the sworn report of the officer and shall be submitted by mail or in person to the Department within seventy-two (72) hours of the issuance of the receipt. The failure of the officer to timely file this report shall not affect the authority of the Department to revoke the driving privilege of the arrested person. (Emphasis added).

¶8 The third paragraph of the statute uses another phrase - "sworn report from a law enforcement officer":

C. Upon receipt of a written blood or breath test report reflecting that the arrested person, if under twenty-one (21) years of age, had any measurable quantity of alcohol in the person's blood or breath, or, if the arrested person is twenty-one (21) years of age or older, a blood or breath alcohol concentration of eight-hundredths (0.08) or more, accompanied by a sworn report from a law enforcement officer that the officer had reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law, the Department shall revoke or deny the driving privilege of the arrested person for a period as provided by Section 6-205.1 of this title. Revocation or denial of the driving privilege of the arrested person shall become effective thirty (30) days after the arrested person is given written notice thereof by the officer as provided in this section or by the Department as provided in Section 2-116 of this title. (Emphasis added).

B. Who May Make the "Sworn Report"?

¶9 The initial question before us is whether the "sworn report from a law enforcement officer" required by § 754(C) is a sworn report by the "arresting officer" mentioned in § 754(A), as opposed to simply an officer with personal knowledge of the events sworn to. In Chase v. State ex rel. Dept. of Public Safety, 1990 OK 78, 795 P.2d 1048, the Oklahoma Supreme Court confirmed that the "sworn report" of § 754(C) is a statutory requirement for a license revocation, stating:

DPS concedes that the sworn report of an enforcement officer, which § 754(3) expressly mandates, is absent from the DPS paperwork and from the record in this case. Although there is an exhibit before us entitled "Officer's Affidavit and Notice of Revocation," the name of the person designated in this document as the affiant differs from that of the individual whose signature appears on it. This patent deficiency in the statutorily required DPS material does indeed make the Department's revocation order vulnerable to invalidation, on timely appeal, for failure to meet the minimum legislatively prescribed standards for the DPS paperwork on which its administrative action must be rested.

Id. at ¶ 5, 795 P.2d at 1050 (footnotes omitted).

¶10 Chase does not characterize the required report as one by the "arresting officer" in the body of the Opinion. Nor does § 754(C) directly state that the "sworn report from a law enforcement officer" must be from the arresting officer, but facially requires only a report from a law enforcement officer who had "reasonable grounds to believe the arrested person had been operating or was in actual physical control of a motor vehicle while under the influence of alcohol as prohibited by law."

¶11 However, in a footnote within the Chase opinion, Justice Opala used the phrase "arresting officer" when paraphrasing the language of subsection C. See Chase at n.1, 795 P.2d at 1049, n.1. This footnote is clearly dictum, as the issue in Chase was not whether the affiant was an "arresting officer" but whether there was a sworn statement at all.[1] Further, after Chase was decided, the statutory text on which this dictum may rely was changed by the Legislature.[2] Therefore, we find no precedential authority on this question.

C. The History and Structure of § 754

¶12 Finding no precedential authority, we turn first to the statutory language. Subsection A of the statute refers to the arresting officer seizing the license of the driver. This is the only reference to an arresting officer we find in this section. Subsection B then refers to the officer attaching to the sworn report the evidence of driving privilege surrendered to or seized by the officer.

¶13 Martinez argues that "the officer" noted in subsection B is clearly the "arresting officer" from subsection A. Therefore, Martinez argues, the "sworn report" mentioned in subsection B is the report of the arresting officer, and the sworn report of subsection C that provides the basis for revocation must also be the report of the arresting officer.

¶14 Our review of the legislative history of § 754 leads us to a different conclusion. Prior to a 1999 amendment, § 754(B) specifically required that:

The seized license, permit, or other evidence of driving privilege and a copy of the receipt form issued to the arrested person shall be attached to the sworn report of the arresting officer and shall be submitted by mail or in person to the Commissioner of Public Safety or a designated representative within seventy-two (72) hours of the issuance of the receipt.

See 47 O.S.1991 § 754(B)(emphasis added).

¶15 Since the 1999 amendment, § 754(B) has stated that:

The evidence of driving privilege and a copy of the receipt form issued to the arrested person shall be attached to the sworn report of the officer and shall be submitted by mail or in person to the Department within seventy-two (72) hours of the issuance of the receipt. . . . (Emphasis added).

The Legislature clearly removed the subsection B reference to the "sworn report of the arresting officer" and substituted the "sworn report of the officer." We must interpret this change as a legislative revocation of any pre-existing requirement that the sworn report be made by the arresting officer.[3] The logic of Martinez's argument is therefore reversed: Because the Legislature did not require the sworn report in subsection B to be made by the arresting officer, the Legislature did not require the sworn report in subsection C to be made by the arresting officer.

D. The Function of the § 754(C) Sworn Report

¶16 On appeal, the parties engaged in considerable argument that the sworn statement of "reasonable grounds" to believe the arrested person was in actual physical control of a motor vehicle is intended to function as an affidavit of probable cause demonstrating either the legality of the original stop or the subsequent warrantless arrest. Martinez argues that the question of probable cause for arrest is determined by this sworn statement. We reject this argument.

¶17 Chase is clear that the § 754(C) sworn report functions only as "administrative documentation"[4] and is taken as true unless facially defective in the initial automatic revocation proceeding. The sworn statement states only a prima facie case for revocation, upon which revocation is automatic. The DPS does not question the contents or authorship of the statement if it facially states a case for revocation.

¶18 To illustrate this point, assume a situation in which all necessary facts stated in the sworn report were fabricated by an officer with no personal or received knowledge of the facts. Although a trial may later establish this defect, and invalidate the revocation, the report is still not defective on its face, if it states the required allegations, and revocation is still automatic on receipt of the fabricated report and the alcohol test results.

¶19 Thus, the report does not establish as a matter of law whether the initial stop was constitutional, nor does it establish establish that probable cause for APC arrest actually existed. It establishes only the prima facie case for revocation. The question of the actual legality of the stop or arrest is first raised in the post-revocation administrative appeal, and is clearly not fully litigated until the license holder seeks trial in the district court, where the issue is litigated de novo on the merits, pursuant to 47 O.S.2011 § 6-211. The actual legality of a stop or arrest is finally determined by trial de novo in the district court, not by the content or author of the § 754(C) sworn report. As the report does not function as an affidavit of probable cause to arrest, it need not be made by the "arresting officer."

E. Conclusion to Section I

¶20 We find that the purpose of the sworn report required by 47 O.S.2011 § 754(C) is to establish the prima facie facts of intoxication and vehicle operation or control necessary to provide a basis for revocation. It does not function as an affidavit of "reasonable suspicion or probable cause" that a stop or arrest was justified. These issues may be preserved by an administrative appeal pursuant to § 754(D), and then tried de novo by the trial court. It is the hearing on the merits, not the contents of the § 754(C) sworn report, that determines the legal question of reasonable suspicion or probable cause.

¶21 Because the § 754(C) report does not function as an affidavit of probable cause for warrantless arrest, but merely establishes a prima facie case for revocation, it does not need to be by an "arresting officer." We find that the statutory language of 47 O.S.2011 § 754(C), requiring a sworn report from a law enforcement officer, does not mandate that the sworn report be made by the "arresting officer."

¶22 We recognize that this decision conflicts with the statement of Division I of this Court in Clawson v. State ex rel. Dept. of Public Safety, 2007 OK CIV APP 89, ¶ 8, 168 P.3d 258, 260, that § 754(C) requires an arresting officer's sworn report.[5] We do not contend that Clawson was incorrectly decided, but note that, like Chase, Clawson did not address the question of whether an arresting officer must make the sworn report, but addressed the questions of scrivener's errors in the sworn report. We further note that Clawson relies entirely on footnote one of Chase, and we have previously determined both that this footnote is dictum and that its basis has been superseded by legislative action.

II. OTHER FACIAL DEFICIENCIES IN THE SWORN STATEMENT

¶23 We have rejected Martinez's theory that revocation of his license was illegal because the § 754(C) sworn statement was not made by Officer Branham. Martinez further argues that Officer Stevenson did not have probable cause to arrest at the time Stevenson placed him under arrest, because Stevenson had not received sufficient information from Officer Branham at the time of the "second" arrest to develop probable cause for APC. However, this alleged defect in the arrest is not patent on the face of the § 754(C) sworn statement. Chase holds that a revocation is void ab intio for lack of a statutory prerequisite only if the sworn statement is defective on its face. Any defect in Officer Stevenson's probable cause for arrest is not evident on the face of the sworn statement. Therefore we find that the rule of Chase is not applicable in this case. Martinez was not entitled to a reversal of the revocation of his license based on any aspect of Officer Stevenson's § 754(C) sworn statement.

III. PROBABLE CAUSE FOR ARREST AND "RE-ARREST"

¶24 Irrespective of the effect of the § 754(C) sworn statement, Martinez argues that he was "re-arrested" by Officer Stevenson, and thus the revocation could still be reversed if Officer Stevenson lacked probable cause at the time of this re-arrest. The record at trial is entirely clear that Martinez was arrested, with probable cause,[6] by Officer Branham, and remained in police custody from that point forward. No re-arrest was necessary. The only remaining question is, as Officer Branham had probable cause to arrest Martinez for APC, could Officer Stevenson then request Martinez to take a blood test? Under Oklahoma's implied consent law, a valid arrest is necessary to authorize a police officer to request submission to a chemical test for blood alcohol. White v. Okla. Dep't of Pub. Safety, 1980 OK 21, ¶ 6, 606 P.2d 1131, 1132. The implied consent statute, 47 O.S.2011 § 751(A)(1), is clear that consent is deemed given upon an arrest for "any offense . . . alleged to have been committed while the person was operating or in actual physical control of a motor vehicle upon the public roads, . . . while under the influence of alcohol or other intoxicating substance . . . ." Martinez was arrested by Officer Branham, with probable cause, for actual physical control of a vehicle while intoxicated. At that time Martinez was deemed to have consented to a blood test by law. We find no indication in case law that this statutorily created consent is revoked when the original arresting officer passes the arrestee on to another officer. Therefore no "second arrest" for APC was necessary for consent to be established.[7]

IV. THE TWO-HOUR PERIOD FOR A BREATH TEST

¶25 Martinez's final argument is that 47 O.S.2011 § 754(F) requires that his blood alcohol test be performed within two hours of his arrest, and his test was not performed within two hours of his "initial" arrest by Officer Branham. This claim is possibly better described as one pursuant to 47 O.S.2011 § 756(C), which states, "To be admissible in a proceeding, the evidence must first be qualified by establishing that the test was administered to the person within two (2) hours after the arrest of the person." However, with the exception of certain jurisdictional questions, we have appellate jurisdiction only to review issues raised in the district court, and the district court's findings. See Arkansas Louisiana Gas Co. v. Cable, 1978 OK 133, 585 P.2d 1113 (citing 12 O.S.1971 § 992). We find no record that this claim of error was made below, or that any objection based on the timing of the breath test evidence was made. We cannot take up this claim of error for the first time in our review of the district court's decision.[8]

V. FEES

¶26 Martinez requests we award attorney fees in this matter. Fee requests in appellate briefs must comply with Oklahoma Supreme Court Rule 1.14, which requires that the request state the statutory and decisional authority allowing the fee. Martinez's request in his appellate brief for appeal-related costs and fees is denied for failure to comply with this rule.

CONCLUSION

¶27 We find that the § 754(C) sworn statement may be signed by an officer with personal knowledge of the facts stated at the time of signing, and that officer need not be the "arresting officer." We find the § 754(C) sworn statement in this case was not facially defective, and Chase v. State ex rel. Dept. of Public Safety therefore does not apply. We find that Officer Stevenson's arrest of Martinez and subsequent breath test were lawful, and the district court did not err in upholding the revocation of Martinez's license.

¶28 AFFIRMED.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] The Chase Court found the sworn statement to be defective because, on its face, the statement was attributed to one officer but clearly signed by another. The Court then determined that the statutory prerequisite of a sworn statement was lacking because the statement contained a "patent deficiency" that rendered the resulting revocation invalid. 1990 OK 78 at ¶ 5, 795 P.2d at 1050. Indeed, the rule of Chase raises the question of whether a statement signed by an officer who is not the arresting officer could be facially deficient at all, as the standard affidavit does not appear to identify the status of the signing officer. Although it could later be shown that the officer making the statement was not the "arresting officer," this would not render the statement facially deficient.

[2] See our analysis of the 2001 version of § 754 compared to the version in force at the time of Chase in Section I (C) of this Opinion

[3] When the Legislature amends a statute after its meaning has apparently been settled by case law, it has expressed its intent to alter the law. Copeland v. Stone, 1992 OK 154, ¶ 10, 842 P.2d 754, 759. While we cannot say with any certainty that the Legislature made this change in response to the dictum at note 1 of Chase, or subsequent Court of Civil Appeals' opinions repeating the Chase dictum, the timing indicates that this change may have been related to Chase and the subsequent opinions.

[4] See Chase at ¶ 6, 795 P.2d at 1050.

[5] Clawson states at ¶ 8, 168 P.3d at 260, "The applicable statute here is 47 O.S.Supp.2005 § 754(C). It requires a sworn report from the arresting officer." (footnote omitted).

[6] See Cudjoe v. State, 1974 OK CR 75, 521 P.2d 409; Hughes v. State, 1975 OK CR 83, 535 P.2d 1023; Mason v. State, 1979 OK CR 132, 603 P.2d 1146, for similar examples of actual physical control of a stopped vehicle.

[7] We further note that the record is clear that Officer Stevenson observed Martinez in an evident state of advanced intoxication in a public place. The Oklahoma Court of Criminal Appeals has repeatedly ruled that public intoxication alone can give probable cause for arrest. See e.g., Jackson v. State, 1968 OK CR 35, 437 P.2d 559; Kincannon v. State, 1975 OK CR 210, 541 P.2d 1339. In addition, see Graves v. State ex rel. Dept. of Public Safety, 1975 OK 142, ¶ 9, 541 P.2d 1326, 1327-28, where the Oklahoma Supreme Court found that a record which revealed the commission of at least one public offense in the presence of the arresting officer, would not support a conclusion that the arrest was illegal. Therefore, any arrest of Martinez by Stevenson was legal. Additionally, even if a "second arrest" was necessary, we note that the trial record regarding what facts Branham informed Stevenson of, and when he did so, is ambiguous and subject to differing interpretations. We will not reverse the district court's findings "unless they are erroneous as a matter of law or lack sufficient evidentiary foundation." Hollis v. State ex rel. Dep't of Pub. Safety, 2006 OK CIV APP 25, ¶ 4, 131 P.3d 145, 146. The evidence was such that the district court could find that Branham informed Stevenson of the facts that indicated APC before Stevenson arrested Martinez. We find no grounds to overturn such a finding

[8] We note, however, that a greater delay is to the advantage of the arrested driver, as blood alcohol levels caused by drinking before arrest will likely have peaked prior to the expiration of this two-hour period.






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Criminal Appeals Cases Cite
Name
Level 1974 OK CR 75, 521 P.2d 409, CUDJOE v. STATE
Discussed 1975 OK CR 83, 535 P.2d 1023, HUGHES v. STATE
Discussed 1979 OK CR 132, 603 P.2d 1146, MASON v. STATE
Discussed 1968 OK CR 35, 437 P.2d 559, JACKSON v. STATE
Discussed 1975 OK CR 210, 541 P.2d 1339, KINCANNON v. STATE
Discussed
Oklahoma Court of Civil Appeals Cases Cite
Name
Level 2006 OK CIV APP 25, 131 P.3d 145, HOLLIS v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed at Length 2007 OK CIV APP 89, 168 P.3d 258, CLAWSON v. STATE ex rel. DEPT. OF PUBLIC SAFETY
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1990 OK 78, 795 P.2d 1048, 61 OBJ 2091, Chase v. State ex rel. Dept. of Public Safety
Discussed at Length 1992 OK 154, 842 P.2d 754, 63 OBJ 3496, Copeland v. Stone
Discussed 1975 OK 142, 541 P.2d 1326, GRAVES v. STATE, DEPARTMENT OF PUBLIC SAFETY
Discussed 1980 OK 21, 606 P.2d 1131, White v. Oklahoma Dept. of Public Safety
Discussed 1978 OK 133, 585 P.2d 1113, ARKANSAS LOUISIANA GAS CO. v. CABLE
Discussed
Title 12. Civil Procedure Cite
Name
Level 12 O.S. 992, Errors in Perfecting Appeal Must Be Raised Promptly - Waiver of Defect or Error
Cited
Title 47. Motor Vehicles Cite
Name
Level 47 O.S. 6-211, Right of Appeal to Court
Cited 47 O.S. 751, Implied Consent to Breath, Blood, or Other Test for Determining Concentration of Alcohol or Other Intoxicating Substance
Cited 47 O.S. 754, Surrender or Seizure of License - Receipt as Temporary License - Revocation or Denial of Driving Privilege - Hearing
Discussed at Length 47 O.S. 756, Admission of Evidence Shown by Tests
Cited