2015 OK CIV APP 60

**Carrie Faye KELLEY,
Plaintiff/Appellant,**

v.

**STATE of Oklahoma ex rel. DEPARTMENT OF PUBLIC SAFETY, Defendant/Appellee.**

**Nos. 113021, 113022.**

Court of Civil Appeals of Oklahoma, Division No. 4.

May 14, 2015.

Brian K. Morton, Edge Law Firm, Tulsa, Oklahoma, for Plaintiff/Appellant.

Joanne Horn, Oklahoma Department of Public Safety, Oklahoma City, Oklahoma, for Defendant/Appellee.

P. THOMAS THORNBRUGH, Judge.

¶1 In this consolidated appeal, Carrie Kelley and Arthur Kelley seek review of the decisions of the district court affirming the revocation of their respective driver's licenses for driving with a blood alcohol concentration in excess of 0.08 g/dL. On review, we reverse both decisions because the Department of Public Safety (DPS) failed to show at trial that the requirements of 47 O.S.2011 § 754(F) were met in this case.

## BACKGROUND

¶2 Carrie Kelley's vehicle was stopped by an officer of the Muskogee Police Department late in the night of July 12, 2011, or early in the morning of July 13. The Officer (Jenkins) stated that he observed Carrie Kelley speeding in a construction zone, and that she appeared intoxicated after being stopped. Arthur Kelley, Carrie Kelley's husband, was also driving that night, and observed Carrie being stopped. Arthur Kelley turned around and stopped, and approached Officer Jenkins. Officer Jenkins testified that Arthur Kelley smelled of alcohol and appeared intoxicated. The Kelleys were both detained, and taken to the local hospital for blood testing, because the Police Department's breath alcohol meter was out of commission. The parties dispute the details of the interaction between Officer Jenkins and the Kelleys, and dispute whether the Kelleys requested a second, independent test of their blood pursuant to 47 O.S.2011 § 751(E). The blood tests indicated that both Kelleys had blood alcohol levels in excess of the legal maximum 0.08 g/dL.

¶3 The Kelleys requested an administrative hearing on the revocations, which were affirmed. The Kelleys then appealed to the district court. The two cases were tried together on December 4, 2012. The issues were the same in each case. The district court upheld the revocations, but, for reasons unknown, the court's decision was not reduced to an appealable order until June 12, 2014. Carrie Kelley and Arthur Kelley ap-

pealed separately, and the two appeals were consolidated by the Supreme Court.

## STANDARD OF REVIEW

■ ¶4 On appeal from an order of an implied consent revocation, an appellate court will not reverse the district court's findings unless the order is erroneous as a matter of law or lacks a sufficient evidentiary foundation. *Hollis v. State ex rel. Dept. of Pub. Safety,* 2006 OK CIV APP 25, ¶4, 131 P.3d 145.

## ANALYSIS

¶5 The issues are the same in the two consolidated cases, and the Kelleys raise three propositions of error. However, we need only address the first proposition—*i.e.,* that the requirements of 47 O.S.2011 § 754(F) were not met in this case—as we find this issue dispositive.

### I. TITLE 47—THE "IMPLIED CONSENT" INQUIRY.

■ ¶6 Title 47 O.S.2011 § 754(F)(1) establishes the inquiry that was required in this case:

1. If the revocation or denial is based upon a breath or blood test result and a sworn report from a law enforcement officer, **the scope of the hearing shall also cover the issues as to whether:**

a. if timely requested by the person, the person was not denied a breath or blood test,

b. the specimen was obtained from the person within two (2) hours of the arrest of the person,

c. the person, if under twenty-one (21) years of age, was advised that driving privileges would be revoked or denied if the test result reflected the presence of any measurable quantity of alcohol,

d. the person, if twenty-one (21) years of age or older, was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more, and

e. the test result in fact reflects such alcohol concentration. (Emphasis added.)

¶7 At trial, DPS apparently argued that an arresting officer is not required to give the appropriate warnings noted in subsections (c) or (d) of § 754(F)(1) before an alcohol test.[1] We interpret the legislative command that the "scope of the hearing shall also cover," followed by a list of conditions, as *requiring that the listed conditions of § 754(F)(1) be established as true.* This includes a finding that the appropriate warnings stated in subsections (c) or (d) were given. The Legislature clearly required these warnings, and we find no indication that anyone except the arresting officer is in a position to give them. We reject any argument that the warnings are not required in some statutorily compliant form.

■ ¶8 Plaintiff Arthur Kelley testified that he was not read these statutory warnings.[2] Officer Jenkins testified that he read Kelley the contents of his "implied consent" card. Under other circumstances, this would be a simple credibility question upon which we would defer to the district court. However, in this case, there is a more fundamental problem. Proceeding from the position that Officer Jenkins did read the Kelleys the contents of his "implied consent" card, DPS did not introduce the "implied consent" card into evidence. It also did not elicit testimony from Officer Jenkins as to the card's contents, or ask if he gave the warning required by § 754(F)(1)(d). *Neither this Court, nor the district court, may assume what information was on Officer Jenkins' card.*

---

1. *See* trial transcript, pp. 43–44, where DPS counsel stated that she is "not aware" of any law that requires the warnings of an "informed consent" card to be read to a driver. Section 754(F) clearly *requires* that the driver "was advised that driving privileges would be revoked or denied if the test result reflected an alcohol concentration of eight-hundredths (0.08) or more." The warning is required by statute, whether the officer "reads it from the card" or recites it from memory.

2. Counsel for the Kelleys, in response to the trial court's inquiry, stipulated that Carrie Kelley's testimony would be the same as that of her husband. Transcript at pp. 47–48.

¶ 9 Section 754(F) is clear that the listed elements must be established in a civil revocation proceeding. The law requires no more than this, but it requires no less. *See Abdoo v. State ex rel. Dep't of Pub. Safety,* 1990 OK CIV APP 2, ¶ 9, 788 P.2d 1389 (implied consent statutory scheme imposes no duty on officer to inform the person charged of the actual period of revocation). A statement that the officer "read the card" is insufficient to establish the requirements of § 754(F) unless accompanied by some evidence or testimony as to the contents of the card. We therefore reverse the district court's order affirming the Kelleys' suspension.

## CONCLUSION

¶ 10 We find no error in the procedure followed by the officer on the scene. However, § 754(F) is clear that the listed statutory elements of proof must be established in a civil revocation. This requirement can be satisfied by the simple expedient of entering a copy of the card used by the officer into evidence at trial, coupled with testimony that the officer read the contents of the card to the party whose license is revoked. In this case, this was not done. Consequently, we must reverse the decision of the district court as to both Carrie Kelley and Arthur Kelley.

¶ 11 **REVERSED.**

RAPP, P.J., and BARNES, J., concur.